## Otha Lee CONLEY *v.* STATE of Arkansas

CR 80-85                                    612 S.W. 2d 722

Supreme Court of Arkansas
Opinion delivered February 23, 1981
[Rehearing denied April 6, 1981.]

*Harold L. Hall*, for appellant.

*Steve Clark*, Atty. Gen., by: *James F. Dowden*, Asst. Atty. Gen., for appellee.

JOHN I. PURTLE, Justice. A Pulaski County Circuit Court jury convicted appellant of burglary and rape. He was sentenced to 30 years plus $15,000 on the burglary and life plus $15,000 on the rape charge. The court ordered the sentences to run consecutively and consecutively with the sentences already being served.

On appeal appellant argues five points for reversal, which will be set out in the body of this opinion.

Appellant was arrested on September 19, 1978, and charged with burglary in violation of Ark. Stat. Ann. § 41-2002 (Repl. 1977) and rape in violation of Ark. Stat. Ann. § 41-1803 (Repl. 1977). The burglary allegedly resulted when appellant unlawfully entered a residence on West Thirteenth Street in Little Rock, Arkansas, on July 15, 1978, and forcibly raped a young woman. The victim gave a description of her assailant to the police a few minutes later. She further stated she could recognize the voice and did recognize it when she alleged he called on two occasions a week or so after she was raped. Also, a line-up was held on August 29, 1978, and after the victim heard each man in the line-up speak she identified the appellant as her assailant. Due to mechanical difficulty, photographs of the line-up did not develop. However, the police had on file individual photographs of the members of the line-up.

At a pretrial conference the appellant moved to suppress

the line-up identification. The victim was a witness at the hearing, and the court explained to her his reasons for not suppressing the line-up identification. In so doing, the court instructed the witness on what to expect at the trial. He explained that the state would not ask her about the line-up but that the defendant's attorney might do so and if he did she could tell them all about the line-up. The court warned the state not to go into the line-up on direct or it would possibly result in a mistrial. The deputy prosecuting attorney stated they had no intention of going into the line-up at the trial. The court also refused to allow the individual photographs of the persons in the line-up to be introduced but permitted defense counsel to proffer them into the record for appeal purposes.

When the jury was being selected for trial the state excused six black prospective jurors. Two of the six had already been accepted by the state and the defense. The defendant had exhausted his twelve peremptory challenges when the two were excused from the box. The state had not and did not use all ten of its peremptory challenges. Apparently, some blacks remained on the petit jury panel which tried the appellant. The appellant is black. His motion for a mistrial, based on the peremptory challenge method used by the state in excluding only black jurors, was denied.

In the opening statement the deputy prosecutor stated that the victim would testify she identified the appellant at the police line-up. Neither the court nor the prosecuting attorney could remember any agreement not to mention the line-up. The appellant moved for a mistrial which was denied. As the trial continued the state questioned the victim about the line-up identification, and the appellant cross-examined her about the line-up. The questioning of the witness on direct examination by the state occurred after the court suggested the matter be cleared up.

The court refused to give appellant's Instruction No. 1 which related to identification testimony only.

In the sentencing stage the state introduced a New York

felony conviction. The appellant was represented by counsel in that conviction. The state also introduced a double conviction entered on February 10, 1979, for an offense committed prior to the one for which he was being tried.

I.

THE COURT ERRED IN PERMITTING THE STATE TO PEREMPTORILY CHALLENGE A BLACK JUROR WITHOUT CAUSE FROM THE BOX AFTER THE APPELLANT HAD EXHAUSTED HIS PEREMPTORY CHALLENGES.

II.

THE COURT ERRED IN FAILING TO DECLARE A MISTRIAL WHEN THE STATE EXCUSED SIX BLACK JURORS BY PEREMPTORY CHALLENGES OF WHICH TWO OF THE JURORS HAD BEEN ACCEPTED BY BOTH THE STATE AND THE DEFENSE IN VIOLA-TION OF HIS RIGHTS UNDER THE CONSTITUTION OF THE UNITED STATES AND THE STATE OF ARKANSAS.

We treat these two arguments together as they are overlapping. There is no dispute that the state was allowed to excuse two jurors after they had been seated. However, we think this argument was laid to rest in the case of *Nail* v. *State*, 231 Ark. 70, 328 S.W. 2d 836 (1959). In *Nail* we approved the state being allowed to challenge a juror who was already approved, and we also stated that if the circumstances were reversed the defendant would be allowed the privilege of peremptorily challenging a juror already accepted. The appellant relies upon the case of *Jeffries* v. *State*, 255 Ark. 501, 501 S.W. 2d 600 (1973). In *Jeffries*, the court refused to allow the defendant to excuse a juror who had already been accepted by both sides and seated in the box. We upheld the trial court's action on the grounds that the court exercised its discretion in the matter. Therefore, *Jeffries* and *Nail* are not in conflict. The appellant cites one other case in support of his argument, and that is *Clark* v.

*State*, 258 Ark. 490, 527 S.W. 2d 619 (1975). However, *Clark* repeats the exact situation as was found in *Jeffries*.

Appellant also challenges the state's method of exercising its peremptory challenges which resulted in excusing only black jurors. However, the appellant fails to take notice of the fact that there were still black jurors left on the trial panel after the state excused two from the panel. We do not find that the appellant has shown that the state is following a plan of systematic exclusion of black veniremen. Therefore, the argument is controlled by the case of *Brown* v. *State*, 239 Ark. 909, 395 S.W. 2d 344 (1965), cert. denied 384 U.S. 1016 (1966). In *Brown* we held a black defendant was not entitled absolutely to have a black juror on the panel which tried his case. See *Swain* v. *State of Alabama*, 380 U.S. 202 (1965). Therefore, we find no error under appellant's arguments I and II.

### III.

THE COURT ERRED IN DENYING APPELLANT'S MOTION FOR MISTRIAL WHEN THE DEPUTY PROSECUTING ATTORNEY IN HIS OPENING STATEMENT TOLD THE JURY THE VICTIM IDENTIFIED THE APPELLANT IN A LINE-UP AFTER THE COURT RULED THAT IT WOULD NOT BE REFERRED TO AT TRIAL.

Appellant moved to suppress the line-up identification at a pretrial hearing. The victim was a witness at the suppression hearing. A portion of the hearing follows:

THE COURT: Gentlemen, ... I suspect that there will be not any mention of the line-up. Is that correct?

MR. CRANK (PROSECUTOR): I have no intention of doing it.

MR. NEWCOMB (DEFENSE): Your Honor, I'm not sure what my trial strategy will be.

* * *

THE COURT: Let me advise ... that customarily ... you will be called to the stand and asked the questions that the prosecutor must ask you and then you will be asked if you can identify the man who raped you. "Is he in the Court today?" And you may or may not identify him. But, normally, we do not get into the question about an out of court identification, to-wit: the line-up. Generally, they don't want to do that because it sometimes has the ability to reenforce the witness' testimony to the jury. But, in this case, Mr. Newcomb does not know what his trial strategy will be. So, he may cross-examine you about "Have you had an opportunity to see Mr. Conley other than the night?" If he does, you will be permitted to say, "Yes." If he proceeds in that, then you will be permitted to say when. "I saw him in a line up."

* * *

We're getting in a technical area. If you said it on direct examination by Mr. Crank, it might be objectionable and it might be grounds for a mistrial and this sort of thing, which we don't want to go through again. This is why I asked you if your identification is based upon the incident that night. But, if Mr. Newcomb elects to question you about the line up, you may feel free to discuss it if he brings it up.

During his opening statement to the jury the deputy prosecuting attorney stated:

... that she did go down and view a line up, that she positively identified a subject in this line up by his voice and by his physical appearance, that this subject was Otha Conley.

At this point the appellant objected and moved for a mistrial. Neither the court nor the prosecutor could remember any agreement not to allow the prosecution to mention the line-up unless it was first mentioned by the defense. However, after rejection of the motion for a mistrial the appellant did not request an admonition. During the direct

testimony of the victim she identified the appellant as the man who raped her. She was asked if she was positive that this was the man who raped her. After an affirmative response, counsel for the state and defense approached the bench and conferred with the court at which time the court stated:

> I think that you ought to go into the basis of her identification. Is it the night of the thing, or the line up or what, since you brought it up.

Again, the appellant moved for a mistrial which was overruled. The appellant did not move for an admonition. The questioning continued before the jury by the deputy prosecutor asking the following questions:

> Miss . . ., you stated you identified Otha Conley as the person who raped you. Did you make that identification based on what you saw at the line up or did you make that identification based on what you recall from the time you were raped?

The witness eventually answered that she was making her in-court identification from the events which occurred on the night she was raped. We disagree with appellee's argument that this line of conversation was related only to the photographs of the individuals who were in the line-up.

We have had many occasions to deal with out of court identifications by witnesses. In *Warren* v. *State*, 103 Ark. 165, 146 S.W. 477 (1912), we stated:

> . . . but no where, so far as we can ascertain, has it ever been held that a so-called "extrajudicial identification" is admissible as original testimony; and it was, therefore, in any view of the case, inadmissible, for there was no attempt to impeach the witness by contradictory statements, or otherwise. The testimony was introduced as original evidence and it was clearly inadmissible, for it was not competent to corroborate the identifying witness by proof of former identification.

In *Birones* v. *State*, 105 Ark. 82, 150 S.W. 416 (1912), we stated:

... In the recent case of *Warren* v. *State*, 103 Ark. 165, we held that what is termed an extrajudicial identification is inadmissible as original testimony. The ruling of the trial court in excluding the testimony of the witness, Wilson, was in accordance with the announcement of this court in the *Warren* case; but the testimony of Miss Andrews, in stating that she saw defendant at police headquarters and recognized him, in nowise violated the rule we had laid down. It was entirely competent for her to state how often she had seen the defendant before and after the commission of the crime, and whether she recognized him or not.

In the subsequent case of *French* v. *State*, 231 Ark. 677, 331 S.W. 2d 863 (1960), the victim properly testified that he identified the defendant at the police station in a line-up. In answer to the challenge of the extrajudicial identification, we stated:

Certainly it was proper to answer that question and state when and where he identified the defendant.

In the later case of *Bishop* v. *State*, 236 Ark. 12, 364 S.W. 2d 676 (1963), we stated:

The court properly allowed the prosecuting witness to testify that she identified the accused at the county jail on the day after the offense. *French* v. *State*, 231 Ark. 677, 331 S.W. 2d 863 (1960).

If any confusion existed as to our prior decisions in the matter of extrajudicial identifications, it has been put to rest by Acts of Arkansas 1979, No. 1097. In amending the Arkansas Uniform Rules of Evidence the purpose of Act 1097 was stated by the General Assembly to be to amend Rule 801 (d)(1) to include 'prior identification of a person' in the definition of statements which are not hearsay. With the 1979 amendment Rule 801 (d)(1) now reads:

Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (iii)

one of identification of a person made after perceiving him; or ...

Therefore, we hold that a witness may testify on direct examination that he has previously identified the defendant and may relate when and where such identification took place. We find that it was not error to allow the prosecuting attorney to offer original testimony by the victim that she had made extrajudicial identification of the appellant.

In the case of *United States* v. *Lewis,* 565 F. 2d 1248 (2nd Cir. 1977), the federal rules concerning hearsay evidence were considered. Federal Rules of Evidence, Rule 801(d), has the exact words as we have quoted from our Rule 801(d). In *Lewis* the Court considered the purpose of the amendment to Rule 801(d), which is the identical amendment to our Rule 801(d), and concluded that line-up identification was more reliable than in-court identification. We agree with the reasoning set forth in *Lewis*.

## IV.

THE COURT ERRED IN REFUSING TO GIVE DEFEND-ANT'S REQUESTED INSTRUCTION NO. 1.

Appellant's fourth argument for reversal has been recently decided in *Conley* v. *State,* 270 Ark. 886, 607 S.W. 2d 328 (1980). This is the identical instruction offered in *Conley*, and for the reasons stated therein we find no error in the trial court's rejection of this instruction.

## V.

THE COURT ERRED IN PERMITTING THE PROSE-CUTING WITNESS TO IDENTIFY AN UNIDENTI-FIED VOICE SHE HEARD OVER THE TELEPHONE AS BEING THE VOICE OF APPELLANT.

The appellant argues the court improperly allowed the victim to testify that she recognized the appellant's voice over the telephone. Appellant relies on the case of *Bailey* v. *State*, 238 Ark. 210, 381 S.W. 2d 467 (1964). In *Bailey* we

held that a witness could not testify that she recognized the accused's voice over the telephone. In the present case the victim herself testified she recognized the appellant's voice over the telephone. She had heard him talk at the time of the offense and she heard him speak when she viewed the line-up at the police station. We have previously allowed a victim to testify as to the recognition of the voice of an accused. *Smith* v. *State*, 240 Ark. 771, 402 S.W. 2d 412 (1966), and *Harkness* v. *State*, 267 Ark. 274, 590 S.W. 2d 277 (1979). Therefore, it was not error for the court to allow the victim to testify as to voice identification.

## VI.

In response to the requirements of Ark. Stat. Ann. § 43-2725 (Repl. 1977) and Rule 11 (f) of the rules of this court, the record has been analyzed for questions raised and objections made at the trial but not briefed on appeal. Such examination revealed appellant to have been charged and convicted as an habitual criminal. Ark. Stat. Ann. § 41-1001 (Repl. 1977) states:

(1) A defendant who is convicted of a felony and who has previously been convicted of more than one (1) but less than four (4) felonies, or who has been found guilty of more than one (1) but less than four (4) felonies, may be sentenced to an extended term of imprisonment. . . .

The information in this case was amended to charge the appellant as an habitual offender. In the penalty phase of the bifurcated trial the state offered into evidence, over the objection of the appellant, a prior felony conviction from the State of New York. Also, the state offered into evidence a conviction of burglary and rape, which conviction was dated February 10, 1979. The offense for which he was convicted on February 10, 1979, occurred before July 15, 1978, the date the offense was committed for which the appellant is presently being tried. In *Washington* v. *State*, 271 Ark. 420, 609 S.W. 2d 33 (1980), we dealt with a situation very similar to the present one. In *Washington* we were dealing with the situation where the prior conviction concerned an offense

which occurred after the commission of the principal offense. In the present case the offense upon which the prior felony conviction of February 10, 1979, rested was committed prior to July 15, 1978. Therefore, the New York conviction and the February 10, 1979, conviction constitute two prior felony convictions.

Dicta in the *Washington* v. *State*, supra, opinion indicated that we assumed deterrence was the basis for the Arkansas Habitual Criminal Act. However, we have reviewed Act 474 of 1977 and find that the commentary indicated the new act achieved the basic purpose of punishing the recidivist more severely than the former method. On closer study it is our opinion that the purposes of the act are to increase the punishment of multiple offenders and to protect the citizens of the community. Therefore, we are able to adhere to the plain language of Ark. Stat. Ann. § 41-1001 (1) which states that a defendant who is convicted of a felony and has been convicted of more than one but less than four previous felonies is subject to the harsher punishment.

Affirmed.

HICKMAN, J., concurs.