Hershel Doyle MARTIN *v.* STATE of Arkansas

CR 80-261                                        614 S.W. 2d 512

Supreme Court of Arkansas
Opinion delivered April 27, 1981

*E. Alvin Schay*, State Appellate Defender, by: *Jackson Jones*, Deputy Appellate Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *Theodore Holder*, Asst. Atty. Gen., for appellee.

STEELE HAYS, Justice. Appellant, Hershel Doyle Martin, was tried and convicted on four counts of theft of property in violation of Ark. Stat. Ann. § 41-2203 (Repl. 1977). The charges stem from separate incidents on August 26, 1978, in which counterfeit checks purportedly issued by A. Tenenbaum Company, Inc., were cashed at separate branches of Twin City Bank by a man representing himself to be the payee, James Jackson. The checks were in the amount of $3,582.51, $3,870.20, $3,672.15 and $1,875.50. They bore a facsimile signature of Jean Gann, Tenenbaum's bookkeeper, who testified that while the checks resembled those used by the company, they were not theirs and were not, in fact, signed by her. The checks were initially debited against Tenenbaum's account with Twin City Bank but after discovery the withdrawals were credited back to the account.

The appellant urges several points for reversal of the conviction. First, that the information was fatally defective since the proof of ownership of the property at trial did not support the allegation of the information. Appellant argues that the trial court erred in denying appellant's motion for a directed acquittal on that ground. We disagree.

The information filed against the appellant alleged that Hershel Doyle Martin:

On or about the 26th day of August, 1978, with the purpose of depriving the true owner of its property, [did] take unauthorized control over property having a

value in excess of $2,500.00, by deception, such being the property of A. Tenenbaum Company.

The remaining three counts contain identical language except for the allegation of value in count IV.

The proof at trial is uncontroverted that the checks at issue were made to appear to be those of A. Tenenbaum Company, Inc., but that that company did not issue the checks and that Twin City Bank restored the amounts of the checks to A. Tenenbaum Company's account after the theft was discovered. From this, the appellant argues that the information was irreparably defective since the property in question, i.e., the money received from the bank upon presentment of the checks, was not in fact the property of A. Tenenbaum Company as alleged in the information. The argument is without merit.

Prior to the enactment of our present criminal code, Arkansas recognized a separate offense of "obtaining personal property by false pretense." Ark. Stat. Ann. § 41-1901 (Repl. 1964). That offense was defined as:

> Every person, firm or corporation who with intent to defraud, cheat or avoid payment therefore, shall designedly by color of any false token or writing ... obtain any money ... shall be deemed guilty of larceny, and punished accordingly.

We observe that the appellant, having obtained money by color of a false writing, here fictitious checks, could have been prosecuted under the old "false pretense" statute.

As Ark. Stat. Ann. § 41-2202 (Repl. 1977) specifically provides:

> Conduct denominated theft in this Chapter [§§ 41-2201 — 41-2208] constitutes a single offense embracing the separate offenses heretofore known as larceny, embezzlement, false pretenses, extortion, blackmail, fraudulent conversion, receiving stolen property, and other similar offenses. A criminal charge of theft may be

supported by evidence that it was committed in *any manner* that would be theft under this Chapter, *notwithstanding the specification of a different manner in the indictment or information*, subject only to the power of the court to ensure a fair trial ... where the conduct of the defense would be prejudiced by lack of fair notice or by surprise. (Emphasis supplied.)

The issue, therefore, is whether the information filed against the appellant prejudiced the defense "by lack of fair notice or by surprise." We are satisfied that it did not. Appellant makes no allegation nor showing that he was prejudiced. More than that, the property stolen was that of A. Tenenbaum Company beyond any doubt. The checks, although forged, were drawn on the funds of A. Tenenbaum Company on deposit in Twin City Bank. The account number on the checks was the correct account number of A. Tenenbaum Company and the balance of the company's account exceeded the amounts withdrawn. The monies paid out by the bank in reliance on these specious checks belonged to A. Tenenbaum Company. The fact that under the law the bank is liable to its customer when it cashes a forged instrument does not alter the initial character of the crime of theft. It is the ownership at the time the offense occurs that should be looked to, not who ultimately bears the loss. This element distinguishes this case from the case of *Boyette v. State*, 265 Ark. 707, 580 S.W. 2d 473 (1979), on which appellant relies.

Second, the appellant argues that the trial court erred in admitting testimony concerning prior, out-of-court, identifications of the appellant by certain witnesses, as to two counts of the information. In the present case, a police officer, T. J. Farley, was allowed to testify that two weeks after the crime he had shown a six photographic "line-up" to five banks tellers and that each had picked the defendant. That the tellers could themselves have testified to their own extra-judicial identification of the defendant under the Uniform Rules of Evidence is beyond argument. Rule 801 (d) (1) (iii) provides:

A statement is not hearsay if: (1) the declarant testifies at

the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (iii) one of identification of a person made after perceiving him. ...

And recently in *Conley* v. *State*, 272 Ark. 33, 612 S.W. 2d 722 (1981), we made clear:

Therefore, we hold that a witness may testify on direct examination that he has previously identified the defendant and may relate when and where such identification took place. *Conley*, at 41.

However, the issue here presented is whether the officer may testify as to the extrajudicial identifications under Rule 801(d)(1)(iii). We are aware that prior to the adoption of Rule 801(d)(1)(iii) we held that testimony of the nature here in question was not admissible, notably in the cases of *Trimble & Williams* v. *State*, 227 Ark. 867, 302 S.W. 2d 83 (1957) and *Hicks* v. *State*, 231 Ark. 52, 328 S.W. 2d 265 (1959). As we said, the bank tellers could have testified to their extrajudicial identifications of the defendant under Rule 801(d)(1)(iii). *Conley*, above. We now hold that where there is no defect in the identification procedure used, and where each of the persons making the extrajudicial identification is present at trial and subject to cross-examination, recall, or is subject to being called as a hostile witness by the defense, then a witness to the extrajudicial identification may testify as to the existence and circumstances of the extrajudicial identification. We hold that under Rule 801(d)(1)(iii) Officer Farley could properly testify that each of the bank tellers initially identified the appellant as the individual committing the offense. In so holding, we are persuaded by the observation first made in *Conley* v. *State*, above, that line-up identification is often "more reliable than in-court identification." *Conley*, at 41.

Finally, the appellant argues that there is insufficient evidence to support the appellant's conviction on two of the counts charged. This argument is based on the somewhat equivocal in-court identification of the appellant by the tellers who cashed two of the checks. However, as we have

held under the previous point, the jury need not rely solely on the in-court identifications, but may also consider the extrajudicial identifications testified to by Officer Farley, as well as on the similarity of all four episodes. On appeal, we must view the evidence in the light most favorable to the appellee, *Lunon* v. *State*, 264 Ark. 188, 569 S.W. 2d 663 (1978). In doing so, we observe that the appellant was positively identified as the offender by all five tellers shortly after the crime and by three of them at trial, though nearly two years had elapsed. We believe there was sufficient evidence to support the conviction on the two counts here questioned.

For the reasons given in this opinion, we affirm the trial court.

PURTLE, J., dissents.

HOLT, J., not participating.

JOHN I. PURTLE, Justice, dissenting. I agree with the appellant that the trial court committed reversible error in allowing Officer T. J. Farley to give hearsay testimony relating to two witnesses who were unable to make in-court identification of the appellant. The officer was allowed to testify that the two witnesses had made extrajudicial identification of the appellant from photographs viewed at the police station. I am of the opinion that all of our case law and our rules of evidence prevent such testimony from being received.

Uniform Rules of Evidence, Rule 801, states:

***

(c) Hearsay. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

(d) Statements Which are Not Hearsay. A statement is not hearsay if:

(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (iii) one of identification of a person made after perceiving him; or

\* \* \*

Obviously, when the officer testified that two of the witnesses identified the photographs at some point before the trial, this was clearly hearsay as defined in 801 (c). Of course, 801 (d) attempts to set out the exceptions to the hearsay and his testimony clearly does not fit into the exception. If the witnesses had testified that they observed photographs at the police station, then it would have been harmless to allow the officer to verfiy that they had indeed looked at photographs and made positive identification at that time. This same question was considered in the case of *Conley* v. *State*, 272 Ark. 33 (1981), wherein we stated:

If any confusion existed as to our prior decisions in the matter of extrajudicial identifications, it has been put to rest by Acts of Arkansas 1979, No. 1097. In amending the Arkansas Uniform Rules of Evidence the purpose of Act 1097 was stated by the General Assembly to be to amend Rule 801 (d) (1) to include 'prior identification of a person' in the definition of statements which are not hearsay. . . .

We further stated:

Therefore, we hold that a witness may testify on direct examination, that he has previously identified the defendant and may relate when and where such identification took place.

Thus, both our case law and our rules permit a witness to testify as to prior identification of an accused but nowhere is there any authority for allowing a witness to testify that another witness made an extrajudicial identification of an accused.

In the case of *Cromwell* v. *State*, 269 Ark. 104 (1980), we held that a third person, such as a police officer, could not testify that another witness identified the accused on an earlier occasion. In *Cromwell* the extrajudicial identification which we permitted was that of the prosecuting witness. His testimony was that he identified the appellant in a line-up on an earlier occasion and that he also saw the appellant at a hearing or pretrial conference. Therefore, neither *Conley*, supra, nor *Comwell* hold that a third party witness may testify as to extrajudicial identification made by another witness. The rule, given its plain ordinary interpretation, also excludes this testimony. Therefore, I would reverse the case and remand it for another trial.