Odell DAUGHERTY *v.* STATE of Arkansas

CA CR 81-49                                        623 S.W. 2d 209

Court of Appeals of Arkansas
Opinion delivered October 28, 1981

114

*Wallace, Hilburn, Clayton & Calhoon, Ltd.,* for appellant.

*Steve Clark,* Atty. Gen., by: *Arnold M. Jochums,* Asst. Atty. Gen., for appellee.

GEORGE K. CRACRAFT, Judge. In this appeal appellant, Odell Daugherty, contends that the trial court erred in permitting a witness to identify him at trial after he had been subjected to a prior impermissibly suggestive confrontation and in refusing to permit him to exercise a peremptory challenge of a juror who had been accepted by both parties. We find no merit in these contentions.

On November 4, 1980, the appellant was found guilty by a jury of the crimes of aggravated robbery and theft of property. He was sentenced to five years imprisonment on his conviction of robbery and two years on his conviction of theft. He appeals from those convictions.

On September 18 a substantial sum of money was taken at gun point from Edith Lawrence, an employee of Roadrunner Service Station in Little Rock. Two days later, at a police "line-up," Ms. Lawrence positively identified the appellant as the person who robbed her. The appellant filed a motion to suppress any identification testimony by this witness for the reason that the line-up was conducted in such an impermissibly suggestive manner as to make her testimony unreliable.

The evidence heard on the motion to suppress indicated that the appellant and one other person in the line-up were dressed in blue prison coveralls provided by the police department, and the other four, though dressed somewhat differently, appeared in whole or in part in prison garb. It was further stated that after she made her positive identification, she asked if she could see the appellant separate from the others. While the officers apparently did not comply with that request, there was evidence that the appellant was

held back before leaving the room, and the witness permitted to view him momentarily separate and apart from the others. There was also evidence that as appellant left the room he was permitted to pass in close proximity to this witness and made some remark to her. She was therefore permitted to hear him speak while not having heard the voices of any of the other participants.

The court ruled that none of the participants should have been placed in the line-up in prison garb but dressed in street clothes; that the officers should not have permitted the witness to hear the appellant speak after leaving the line-up without having heard all of the participants speak those same words from behind the glass; and, that the line-up was impermissibly suggestive. The court therefore ordered that the prosecuting attorney was barred from offering evidence with respect to that confrontation. The appellant's motion that any in-court identification by that witness be also suppressed was denied. She was permitted to make an in-court identification based upon her observations of the appellant other than those at the improper line-up. The appellant contends on appeal that the line-up was so improper as to taint any identification testimony of this witness. We do not agree.

The due process clause of the United States Constitution precludes admission of evidence that is derived from an identification procedure that is so unnecessarily and impermissibly suggestive as to be conducive to further mistaken identification of the accused. Where a line-up is improperly conducted the State is required to show by clear and convincing evidence that a subsequent courtroom identification is based entirely upon independent observations other than the infirm line-up procedure. *United States v. Wade*, 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (1967); *Sims v. State*, 258 Ark. 940, 530 S.W. 2d 182 (1975); *Montgomery v. State*, 251 Ark. 645, 473 S.W. 2d 885 (1971).

In *Sims* it was further declared that the burden of proving that the courtroom identification was not tainted by the improper line-up must rise higher than a mere pre-

ponderance. A finding by the trial court on that issue must be based on evidence that is clear and convincing.

In *Wade* it was declared that unnecessarily suggestive confrontations do not, in and of themselves, require the exclusion. *Wade* makes it clear that it is the substantial likelihood of misidentification which is the primary evil to be avoided. This prejudice does not exist if it be shown by clear and convincing evidence that the subsequent in-court identification is "based entirely upon observations at the time of the crime and not induced or influenced by the conduct of the line-up." *Wade* also furnished the guidelines for a determination of the reliability of the subsequent identification.

> We turn, then, to the central question, whether under the "totality of the circumstances" the identification was reliable even though the confrontation procedure was suggestive. As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Prior to ruling that this witness would be permitted to make an in-court identification the court heard in camera testimony of the witness on that issue. She testified that she was in contact with the robber for about ten minutes. He was unmasked and she "got a good look at his face." He dragged her across the room "face to face." She testified that at the initial confrontation she was positive of her identification without prompting or suggestion. Her identification was immediate and positive. She had previously served as security person at a department store where she received special training in identification techniques. At the time of the robbery she gave the officers an accurate description of appellant's vehicle and took its license number. A few days later, accompanied by a police officer, she picked out

appellant's car on a parking lot at his place of employment and identified it as the one in which the robber fled. She made no pre-trial identification of any other person and her identification at the line-up was immediate and positive. The only objectionable feature of the confrontation which occurred before she had made her positive identification was the garb in which the participants appeared. At that time she had not seen him separate from the others nor heard his voice. Voice recognition plays no part in either identification made by her.

In *McCroskey* v. *State*, 271 Ark. 207, 608 S.W. 2d 7 (1980) the court stated that reliability is the linchpin in determining the admission of identification testimony, and that the reliability of eye witness testimony is properly a question for the jury unless the procedures leading up to it are so defective as to undermine that reliability.

When all of the facts and circumstances are considered we cannot say that the trial court's determination that this witness could make a reliable in-court identification based entirely on her observations at the time of the crime was not supported by clear and convincing evidence.

The appellant next argues that the trial court erred in refusing to allow him to peremptorily challenge a juror who had been previously accepted by the parties. During the impaneling of the jury a venireman was summoned to the jury box by the clerk and inquired of by both counsel. After all of the veniremen had been so interrogated the State exercised two peremptory challenges as did the appellant. The venireman in question was not excused by either party. The clerk then summoned four more prospective jurors to the box. At the conclusion of the interrogation of those jurors appellant asked permission to exercise a peremptory challenge against a venireman previously seated. The court refused to permit the challenge responding that once the juror was accepted and seated, he could not then be stricken.

Ark. Stat. Ann. § 43-1903 (Repl. 1977) provides as follows:

In a prosecution for felony, the clerk under direction of the court shall draw from the jury box the names of twelve petit jurors, who shall be sworn to make true and perfect answers to such questions as may be asked them touching their qualifications as jurors in the case on trial, and each juror may be examined by the State and cross-examined by the defendant touching his qualification. If the court decides he is competent, the State may challenge him peremptorily or accept him, then the defendant may peremptorily challenge or accept him. If not so challenged by either party, he shall stand as a juror in the case and each of the twelve jurors shall be examined and disposed of in a like manner. If any of said jurors are disqualified or challenged the clerk may draw from the box as many more as may be required and as often as may be required until the jury shall be obtained or the whole panel exhausted.

Our courts have held that while this section does provide that if a juror is not challenged by either party he shall then stand as a juror, there are exceptions to this procedure which may be made in the trial court's discretion. In *Conley* v. *State*, 272 Ark. 33, 612 S.W. 2d 722 (1981), and *Nail* v. *State*, 231 Ark. 70, 328 S.W. 2d 836 (1959), and *Jeffries* v. *State*, 255 Ark. 501, 501 S.W. 2d 600 (1973), the court held that whether or not a peremptory challenge may be exercised after the juror has been selected by both sides, is a matter that directs itself to the sound discretion of the trial court.

The appellant contends that the court was not making a discretionary ruling but relied upon an unpublished court rule which prohibited the exercising of a peremptory challenge as to any juror who had previously been accepted by both sides. The objection was stated as follows:

I believe it denies my client a fair trial, and that the record will reflect that we had not exercised all of our strikes. And that the court's order regarding not being allowed to strike from the jury box is not published and is not on file with the clerk of the Arkansas Supreme Court, and therefore is not binding.

Even if such a rule was not effectively filed and the court thus failed to exercise or abused his judicial discretion in his ruling it would still be required that there be a showing or offer to show that the appellant would be prejudiced by the service of the particular juror. We do not reverse the action of a trial court on matters vested in its discretion unless there is a clear showing not only of abuse of that discretion but of prejudice likely to result. *Finch* v. *State*, 262 Ark. 313, 556 S.W. 2d 434 (1977).

As stated in *Finch*, there are other avenues affording an opportunity to tender evidence to show prejudice if it was impossible for counsel to do so at the time his objection was made. No such showing was ever made or offered. We find no merit in the contention.

Affirmed.