Paula Curlin RASMUSSEN *v.* STATE of Arkansas

CR 82-78                                    641 S.W.2d 699

Supreme Court of Arkansas
Opinion delivered October 25, 1982
[Rehearing denied December 6, 1982.]

*Lessenberry & Carpenter,* for appellant.

*Steve Clark,* Atty. Gen., by: *William C. Mann, III,* Asst. Atty. Gen., for appellee.

DARRELL HICKMAN, Justice. A jury found Paula Rasmussen guilty of the first degree murder of her boyfriend, Clarence Corley, and sentenced her to life in prison. Rasmussen's arguments on appeal concern the trial judge's admission and exclusion of evidence. We find that he did not abuse his discretion and affirm the conviction.

Rasmussen and Corley lived and worked together in North Little Rock. On their way home from work on April 10, 1981, they began to argue about Corley's attention to another woman. They had both been drinking beer for several hours and the argument became more heated when

they got to their apartment. Rasmussen testified that Corley asked her for the keys to his truck so he could leave but that she refused. She said she was fearful that Corley was going to physically injure her, so she grabbed a pistol out of the gunrack in their apartment and took the safety strap off. Rasmussen said that Corley then slapped her hand and the gun, a .38 caliber double-action revolver, went off, shooting Corley in the chest. She said that he told her to call an ambulance; but, according to the doctor who performed the autopsy, he died instantly upon being shot.

A neighbor said she heard the arguing, the shot, and heard Corley tell Rasmussen to call an ambulance. The neighbor then called the police. When the police arrived, Corley was dead. The police officers took her to the police station, warned her of her rights, and she gave a statement which essentially said that she had pointed the gun at Corley in self defense, and that Corley pushed the gun causing it to fire. Two of Corley's daughters testified that before the homicide they had heard Rasmussen say she could kill Corley for his infidelity.

Rasmussen raises three points on appeal. The first concerns a pair of eyeglasses that the defense had made which purportedly would allow a person with normal vision to see as Rasmussen sees without her glasses. Apparently, Rasmussen has very poor vision when uncorrected. Rasmussen said that Corley had knocked her glasses off before the shooting. The defense's theory was that when Rasmussen shot Corley, her vision was so blurred that she felt more apprehension of bodily harm than the situation actually presented, thus supporting her claim of acting in self defense. The defense offered no expert proof of the weakness of Rasmussen's vision, nor any expert testimony that the specially made glasses would enable the jurors to see what Rasmussen saw without her glasses. The trial judge pointed out that he had no way of knowing whether the glasses were effective or whether there were any jurors with perfect vision so that the glasses could work anyway. The admissibility of demonstrative evidence is discretionary with the trial judge, and in considering the facts that the trial judge had before him, we find no abuse of that discretion.

*Edgemon* v. *State,* 275 Ark. 313, 630 S.W.2d 26 (1982); *see* McCORMICK'S EVIDENCE § 202 (1972 ed.).

Two photographs of Corley's body were introduced which Rasmussen claims were inadmissible because of their inflammatory nature. One was a color photograph of the victim lying dead on the bed where the police found him. Another was a black and white photograph of the victim from his abdomen to his head. The admissibility of photographs lies within the trial court's discretion. A photograph is ordinarily admissible when it shows the·nature, extent, and location of the wounds. *Spillers* v. *State,* 272 Ark. 212, 613 S.W.2d 387 (1981). We find no abuse of the trial judge's discretion.

Rasmussen's third point for reversal is that the trial court erred by allowing evidence of Corley's intoxication level to go to the jury. After Rasmussen said Corley had ten beers, the State asked Rasmussen whether she would " ... be surprised to know that the autopsy report showed that he [Corley] had a blood alcohol level of only .07 and the legal limit for intoxication — the lowest level is .10? Would that kind of surprise you?" The defense objected, stating that that was an incorrect statement of the law. The following exchange took place:

DEFENSE COUNSEL:

Your Honor, I'm going to object to that. That's not a proper statement of the law. The lowest intoxication level is .05.

THE STATE:

I think the Arkansas law is .10.

THE COURT:

I believe that's correct.

DEFENSE COUNSEL:

.10 raises a presumption that this man had been drinking.

THE COURT:

It raises a presumption that he was under the influence, I believe is a proper statement of the law. Proceed.

The attorneys and the court were no doubt referring to Ark. Stat. Ann. § 75-1031.1 (Repl. 1979). On appeal, the appellant argues that the objection should have been sustained for four reasons: (1) Because Corley's autopsy report had not been introduced; (2) because blood-alcohol content cannot be admitted into evidence until several statutory requirements have been met; (3) because the trial judge's comments supported the prosecutor's declaration; and, (4) the trial judge's comments were misleading. The defense attorney did not try to prevent the discussion of the law; rather, he joined in and argued his interpretation of the statute. Furthermore, the only objection made by the defense at the trial was that the prosecutor's question to Rasmussen was an incorrect statement of the law. Under those circumstances, we find that he did not properly preserve his right to raise these arguments on appeal. *Swaite* v. *State*, 274 Ark. 154, 623 S.W.2d 176 (1981); *Wicks* v. *State*, 270 Ark. 781, 606 S.W.2d 366 (1980).

We have reviewed the record for other errors, and found none.

Affirmed.