Larry Wayne MILLER *v.* STATE of Arkansas

CR 82-152                                    660 S.W.2d 163

Supreme Court of Arkansas
Opinion delivered November 14, 1983

*Lessenberry & Carpenter,* by: *Thomas M. Carpenter,* for appellant.

*Steve Clark,* Atty. Gen., by: *Michael E. Wheeler,* Asst. Atty. Gen., for appellee.

DARRELL HICKMAN, Justice. The death penalty decreed in this case is reduced to life without parole unless the State elects to retry Larry Wayne Miller. Prejudicial error occurred during the penalty phase of the trial. In all other respects the judgment finding Miller guilty is affirmed, the evidence being not only substantial but convincing that he killed Marilee Brewer and intended to kill James Brewer after he and a woman robbed them at their home at Little Rock, Arkansas on January 7, 1982.

After the jury found Miller guilty, the State attempted to prove as an aggravating circumstance that Miller had committed crimes on two other occasions involving an element of violence. Since the State could not produce convictions in either instance it, in effect, tried Miller for these crimes during the penalty phase of the case. The defense objected, pleading surprise, and asked for a continuance to prepare for a defense to this approach by the State. The request was denied and the State proceeded. The State's efforts fell utterly short of the burden of proof; it had to prove, beyond a reasonable doubt, that Miller committed these aggravated robberies, one offense occurring in Missouri, the other in Alabama. The trial judge found the State's proof that Miller had committed robbery in Alabama insubstantial and told the jury to disregard this evidence. He allowed the jury to consider the evidence that a crime was committed in Missouri, however. The victim of that crime testified that he not only could not identify Miller at the trial, but that he did not identify him when shown photographs by an officer after the crime. The only evidence of Miller's guilt of the Missouri crime was an officer's testimony that at the time the victim was shown the photographs he had picked out Miller as one of his assailants. That is not sufficient evidence to support a finding beyond a

reasonable doubt that Miller committed the crime — a finding which the jury made.

The penalty phase of capital murder cases ought not to be turned into a separate trial for other crimes. But the legislature has made it plain that the State can offer evidence that a defendant "committed" another crime which involves an element of violence. Before 1977, the law read: "(2) [T]he defendant was previously *convicted* of another capital murder or of a felony involving the use or threat of violence to the person." [Emphasis added.]

That language was amended by Act 474, 1977, to read: "(3) [T]he person previously *committed* another felony an element of which was the use or threat of violence to another person or creating a substantial risk of death or serious physical injury to another person." [Emphasis added.]

In the Commentary to the statute it is noted: "First, the prosecution need no longer prove that the defendant was previously *convicted* of another offense. The prosecution may establish an aggravating circumstance through proof that the defendant previously *committed* another specified type of offense."

So, it is clear the State can proceed as it did in this case. But when it attempts to prove another unrelated crime, without having evidence of a conviction, it does so at some risk and the trial court must prevent prejudicial evidence from reaching the jury. Obviously the State cannot utterly fail in its burden as it did here because the prejudice cannot be removed. The jury in this case heard evidence that merely amounted to an accusation that Miller had committed two other crimes — not substantial evidence he did so. Also, a defendant has a right to present rebutting evidence in such a case, just as in a trial. How else can a defendant be granted due process of law? That right was asked for but denied in this case. Such a procedure would not necessarily apply in a case where evidence was already before the jury that a separate but related crime was committed during the course of the commission of the capital felony charge in question.

*Clines* v. *State,* 280 Ark. 77, 656 S.W.2d 684 (1983); *See Ford* v. *State,* 276 Ark. 98, 633 S.W.2d 3 (1982).

Here the State unquestionably fell short of its burden and the jury made a finding that cannot be sustained. The trial court also refused the defendant a chance to rebut the evidence, so we have double error. Those errors, however, do not taint in any way the conviction nor prevent a lawful sentence of life without parole from being entered. A reduction in sentence will cure the error. *See Neal* v. *State,* 274 Ark. 217, 623 S.W.2d 191 (1981); *Giles* v. *State,* 261 Ark. 413, 549 S.W.2d 479, *cert. denied* 434 U.S. 894 (1977).

Because of these errors, the death penalty is reduced to life without parole, provided the State of Arkansas may elect within 17 days to retry the appellant rather than accept the reduction.

The other arguments will be reviewed but they are meritless.

James Brewer testified that he was a salesman of tobacco products and made deliveries on a route in Little Rock, Arkansas. When delivering he was paid with cash or checks. After work on January 7, 1982, Brewer returned to his home in Little Rock at about 5:00 p.m. He and his wife had supper and when he heard his wife talking to someone in the kitchen, he went in and found a man and woman who had apparently had car trouble and they asked to use the telephone. They all talked for several minutes. Brewer noticed that the man looked familiar but he could not place him. (It was later proved Miller had worked at a service station on Brewer's route.) As the couple started to leave, the man turned with a revolver in each hand and ordered the Brewers into the living room where he told them to lay down on their stomachs. Brewer's hands were tied with a cord fish stringer. He was never blindfolded. He cooperated by telling them where his money was in the bedroom and where his wife's purse was. The man came back from the bedroom and asked Brewer to show him where the rest of the money was and Brewer went with him. Brewer was lying on the bed when he heard the man pick up a revolver off of Brewer's

chest and pull it out of a holster. Brewer testified he had a .38 and .22 revolver in the bedroom. He then heard a shot and felt the bullet hit the back of his head. He did not lose consciousness however. Shortly thereafter he heard another shot in the living room. After some time, Brewer was able to get off the bed and go into the living room where he found his wife shot and killed. He managed to free his hands and cut the bond on his wife's hands and call the police.

On January 25, 1982, less than three weeks later, Brewer was in a store on Stagecoach Road. He visited with Mr. Goss, the owner of the store, who was apparently an acquaintance of Brewer's. Then he went to Goss' residence. He returned to the store with the owner's wife, who wanted to talk to him about the incident. At about 3:00 p.m., a man walked into the store and Brewer immediately recognized him as his assailant. The man walked down an aisle, stayed for just a minute, left without buying anything and then left in his car. Brewer asked Mrs. Goss who the man was and she told him it was Miller. He called the police and told them he had the name of the man who had shot his wife. He gave them a description of the car and Miller was arrested. He said he noticed that Miller had about a three week growth of beard on his face but nothing else was different. Miller's residence was searched and the police found one red nylon fish stringer, the inexpensive kind, with a ring on one end and a sharp metal piece on the other. Brewer and his wife were tied up with similar cord fish stringers, one red and one green, except the sharp metal piece was removed. Mrs. Goss corroborated Brewer's version of the confrontation in the store and said that Brewer was pale and nervous when he pointed out Miller to her. Testimony was offered that Miller had worked at a gas station on Asher Avenue in Little Rock for about two months in 1981 which Brewer serviced. The owner testified that he would buy between five hundred and seven hundred dollars a week from Brewer and usually paid him in cash.

The appellant argues strongly in support of other points, that the identification of Brewer was legally insufficient. The reliability of the identification was a discretionary decision for the trial court which we cannot say

was wrong. *Walton* v. *State*, 279 Ark. 193, 650 S.W.2d 231 (1983).

It is argued that the admission of the fish stringer was prejudicial error because it had no relevance to the murder. The police also found two cane poles when they searched Miller's place. Obviously the fish stringer was not prejudicial per se and could not inflame the jury. Therefore, it became a question of relevance to be decided by the trial court whether it was admissible, a decision ordinarily discretionary. *Rasmussen* v. *State*, 277 Ark. 238, 641 S.W.2d 699 (1982).

"Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Unif. R. Evid. 401.

The State was able to demonstrate that the fish stringer was just like the fish stringers used to tie the hands of the Brewers. Actually, it was of the same color as one of those used to tie the Brewers. In the case of *Fountain* v. *State*, 273 Ark. 457, 620 S.W.2d 936 (1981), we upheld the admission of a role of black electrical tape as being relevant. It was tape similar to that used to tie the arms of a victim of a rape. It was determined to be admissible because of the similarity between it and the tape used to bind the victim, therefore making the appellant's identity more probable than it would have been without the evidence. In this case the stringer was evidence that the State should have been able to use to show that it could have been Miller who was the killer. It was circumstantial evidence which could be considered by the jury in determining Miller's guilt. *Plummer* v. *State*, 270 Ark. 11, 603 S.W.2d 402 (1980).

Just after the close of the evidence the trial court remarked, "Ladies and Gentlemen, we have an option and I will leave it to you. We can continue through closing arguments and let you retire to decide the first stage of the trial . . . and then come back tomorrow for the second phase of the trial." Counsel for the appellant approached the bench and asked the court to change its last statement

because it implied that there would be a second phase of the trial. The judge remarked to the jury, "If there is a second phase. Picky, lawyers are picky." It is argued that these remarks by the judge were prejudicial and clearly indicated to the jury that the court felt Miller was guilty. There was no motion for mistrial in this case and even after the court made a correcting statement at the request of counsel, there was no motion for a mistrial. Even if it were error, it was manifestly harmless. *See McCarley* v. *State,* 257 Ark. 119, 514 S.W.2d 391 (1974).

The court gave what is commonly called an "Allen" or "dynamite" instruction when the jury returned after deliberating for five hours and indicated it was deadlocked. It is argued this was error. This instruction has been approved before and we do not overrule our prior decisions. *Walker* v. *State,* 276 Ark. 434, 637 S.W.2d 528 (1982).

Some other of the usual arguments made in death cases are perfunctorily recited.

It is argued that the findings regarding pecuniary gain, avoiding arrest and causing serious physical injury to another person are unconstitutional. As the appellant concedes, we have already answered these arguments in other cases. *See, e.g., Woodard* v. *State,* 261 Ark. 895, 553 S.W.2d 259 (1977); *Miller* v. *State,* 269 Ark. 341, 605 S.W.2d 430 (1980). An objection was made to the so-called death qualified jury, which we have ruled on several times, and uniformly rejected, *Rector* v. *State,* 280 Ark. 385, 659 S.W.2d 168 (1983); *Simmons* v. *State,* 278 Ark. 305, 645 S.W.2d 680 (1983).

Under Ark. Stat. Ann. § 43-2725 (Repl. 1977), as put into effect by our Rule 11 (f), we consider all objections brought to our attention in the abstracts and briefs in appeals from a sentence of life imprisonment or death. In this case we find no prejudicial error in the points argued or in the other objections abstracted for review.

Affirmed as modified.

ADKISSON, C.J., and HAYS, J., concur.

STEELE HAYS, Justice, concurring. I take exception to that part of the majority opinion that in the penalty phase of the trial the evidence that the accused has committed other crimes must be substantial. We have said categorically that we do not require the same degree of proof that an aggravating or mitigating circumstance exists as would be required to sustain a conviction, and if there is any evidence of aggravating or mitigating circumstances, however slight, the matter should be submitted to the jury. *Miller* v. *State,* 269 Ark. 341, 605 S.W.2d 430 (1980). The jury must still determine beyond a reasonable doubt that the accused did commit the aggravating circumstance with which he is charged. Ark. Stat. Ann. § 41-1303 (Repl. 1977).

Moreover, we have held that even in the guilt phase of the trial, where the rules of evidence are more strict, the state can offer independent evidence that a victim identified a suspect as the offender. *Martin* v. *State,* 272 Ark. 376, 614 S.W.2d 512 (1981). Here, the majority opinion disallows that evidence in the penalty phase of the trial, where the rules of evidence are more relaxed.