JUSTICE KINSER,
dissenting.
Because I agree with the conclusion of the Court of Appeals that no variance existed between the indictment charging Latasha Gardner with obtaining money by false pretenses in violation of Code § 18.2-178 and the proof offered at trial, Gardner v. Commonwealth, 32 Va. App. 595, 600, 529 S.E.2d 820, 822 (2000), I respectfully dissent.
This Court has stated on more than one occasion that the elements of the crime of larceny by false pretense are “an intent to defraud, an actual fraud, use of false pretenses for the purpose of perpetrating the fraud, and accomplishment of the fraud by means of the false pretenses used for that purpose.” Quidley v. Commonwealth, 221 Va. 963, 965, 275 S.E.2d 622, 624 (1981) (citing Riegert v. Commonwealth, 218 Va. 511, 518, 237 S.E.2d 803, 807 (1977)). In the present case, the Commonwealth proved each of these elements beyond a reasonable doubt.
*26 The defendant went to a branch office of Wachovia Bank and presented a withdrawal slip ostensibly signed by the defendant’s grandfather. Based on that withdrawal slip, the defendant received $725 in cash. However, the defendant’s grandfather had not signed the withdrawal slip authorizing the defendant to receive the funds nor had he given the defendant permission to sign his name to the withdrawal slip.
Nevertheless, the majority concludes that, because the money received by the defendant was the property of the bank, see Bennet v. First & Merchants Nat’l Bank, 233 Va. 355, 360, 355 S.E.2d 888, 890-91 (1987), a fatal variance existed between the indictment and the proof offered at trial. In reaching this conclusion, the majority focuses solely on the debtor-creditor relationship between a financial institution and its depositor. Although I do not dispute that, when funds are deposited in a bank, the funds become the property of the bank, see id., I do not believe that the Conrmonwealth proved a different offense from the one alleged in the indictment.
When the bank paid cash to the defendant in accordance with the withdrawal slip, the bank believed that it was paying funds from the grandfather’s account and accepted the withdrawal slip as a debit to that account. Although the bank ultimately did not debit the grandfather’s account when it learned of the defendant’s fraud, see Code § 8.4-213(l)(c), that fact does not create a fatal variance in this case. “[T]here is no requirement that the intended victim suffer actual pecuniary loss[,]” nor is “the offense . . . purged by ultimate restoration or payment to the victim.” Quidley, 221 Va. at 966, 275 S.E.2d at 625.
In Martin v. State, 614 S.W.2d 512 (Ark. 1981), the defendant cashed several counterfeit checks drawn on the account of A. Tenenbaum Company, Inc., at separate branches of a bank. The bank initially debited the checks against Tenenbaum’s account but credited the funds back to the account after learning that the checks were counterfeit. Id. at 513. On appeal, the defendant alleged that the information charging him with theft of property was defective because “the property in question, i.e., the money received from the bank upon presentment of the checks, was not in fact the property of A. Tenenbaum Company as alleged in the information.” Id. The court disagreed, noting that the monies paid out on the counterfeit checks belonged to A. Tenenbaum Company. Id. at 514. The court further stated that “[t]he fact that under the law the bank is liable to its customer when it cashes a forged instrument does not alter the *27 initial character of the crime of theft. It is the ownership at the time the offense occurs that should be looked to, not who ultimately bears the loss.” Id.
In distinguishing the decision in United States v. Pavloski, 574 F.2d 933 (7th Cir. 1978), from the present case, the majority relies on the fact that, in Pavloski, the bank initially debited its customer’s account although the court stated that “these reductions in funds were temporary[,]” id. at 936, whereas the bank in the present case never debited the grandfather’s account. I do not believe that the pivotal factor should be whether a bank initially debits its customer’s account but later credits the funds back to the customer, or never debits the account because the bank learns of the fraud before the debit transaction is completed. In either event, the bank suffers the pecuniary loss even though it is not the intended victim. But, the crime of larceny by false pretenses is not “purged by ultimate restoration or payment to the victim.” Quidley, 221 Va. at 966, 275 S.E.2d at 625.
As the Court of Appeals stated, the issue in this case “is not the abstract nature of the bank’s underlying civil liability to [the defendant’s] grandfather[,]” but rather the transaction engaged in by the defendant. Gardner, 32 Va. at 599-600, 529 S.E.2d at 822. The crime of larceny by false pretenses is complete “when the fraud intended is consummated by obtaining the property sought by means of the false representations[.]” Quidley, 221 Va. at 966, 275 S.E.2d at 625. In this case, that occurred at the moment when the defendant obtained the money by using the fraudulent withdrawal slip. Furthermore, the defendant makes no showing that she was prejudiced or surprised by the proof offered at trial or that the indictment failed to give her fair notice of the nature of the charge pending against her.
For these reasons, I respectfully dissent and would affirm the judgment of conviction.