Cite as 2024 Ark. App. 274

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-23-573

| | | |
|---|---|---|
| JOHN DAMRON | | Opinion Delivered April 24, 2024 |
| | APPELLANT | APPEAL FROM THE BAXTER COUNTY CIRCUIT COURT |
| V. | | [NO. 03CR-22-135] |
| | | HONORABLE JOHN R. PUTMAN, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | |
| | | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

John Damron appeals his conviction for boating while intoxicated (BWI). Damron was initially tried in the Baxter County District Court for BWI and negligent operation of a motorboat. He was found guilty of BWI and not guilty of the boating violation. Damron appealed to the Baxter County Circuit Court, where he was again convicted of BWI in a bench trial. He raises three points on appeal. We affirm.

The circuit court first addressed whether there was probable cause for the stop of Damron's boat. Corporal Lyndle Crownover, a wildlife officer for the Arkansas Game and Fish Commission, testified that on July 3, 2021, he was on routine patrol in his patrol boat on Norfork Lake. Crownover saw a jet ski and a boat driven by Damron going back and forth such that they appeared to be racing or trying to cut each other off. Crownover said

that the jet ski and boat were about twenty-five to thirty feet apart, that they were traveling roughly thirty miles an hour, and that the jet ski was in danger of running into the bank. Crownover believed that a crash was imminent and stopped Damron's boat for that reason. According to Crownover, Damron acknowledged that he was about twenty-five to thirty feet from the jet ski and said that he understood why he was stopped since it could have been a dangerous situation. Crownover testified that Damron violated the law that requires that a boat travel at a safe distance and a safe speed where, here, the vessels were dangerously close; he believed it to be reckless or negligent operation of the boat. The circuit court found probable cause for the stop.

Crownover then testified that when speaking with Damron, he smelled an odor of intoxicants on him and asked Damron how much he had had to drink. Damron told him he had five beers that day. Crownover administered a portable breath test (PBT) at 6:41 p.m. and a second PBT approximately fifteen minutes later before determining that they needed to move to solid ground for field-sobriety testing. Crownover testified that Damron failed all three field-sobriety tests, demonstrating all six indicators of intoxication on the horizontal-gaze-nystagmus test and two clues each on the walk-and-turn and one-leg-stand tests. Crownover testified that he determined that Damron was intoxicated and needed to have a blood or breath alcohol concentration (BAC) test. This test was given to him at 8:37 p.m. with a result of 0.09 alcohol concentration. Crownover wrote Damron a ticket for BWI and improper distance.

On cross-examination, Crownover testified that he "probably" would have considered Damron to have passed the walk-and-turn and one-leg-stand tests on their own, but his conclusions were based on the horizontal-gaze-nystagmus test. Crownover agreed with Damron's attorney that it takes time for a person's body to absorb alcohol and that if Damron "had just consumed alcohol that his body would have been absorbing it and it would have been causing his BAC to rise."

The State rested following Crownover's testimony, and Damron moved to dismiss, arguing that the State had failed to prove intoxication. Damron argued that his BAC rose during the two hours between the stop and the BAC test, and if the test had been given sooner, he would have been under the legal limit. The circuit court denied the motion.

Damron testified that he probably had five or six beers that day as well as sandwiches and snacks. He said that he had a couple of beers in the hour preceding the stop and probably finished his last beer ten or fifteen minutes before the stop. Damron agreed that the BAC test was given approximately two hours and twenty-two minutes after he had stopped drinking, and he said that he did not have an explanation as to why his BAC would register 0.09 at that time. The circuit court denied Damron's renewed motion to dismiss and found him guilty of BWI. The court acquitted him of the boating violation.

## I. *Sufficiency of the Evidence*

Damron first challenges the sufficiency of the evidence. In reviewing a challenge to the sufficiency of the evidence, we determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Lockhart v. State*, 2017 Ark. 13, 508 S.W.3d 869.

3

Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* This court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.* It is well settled that it is the province of the fact-finder to determine the weight of evidence and the credibility of witnesses. *Id.*

Under Arkansas Code Annotated section 5-65-103 (Repl. 2016), it is unlawful for a person to operate or be in actual physical control of a motorboat on the waters of this state if the person is either (1) intoxicated or (2) at that time the alcohol concentration in the person's breath or blood was eight hundredths (0.08) or more. For purposes of the offense, intoxicated means influenced or affected by the ingestion of alcohol, a controlled substance, any intoxicant, or any combination of alcohol, a controlled substance, or an intoxicant, to such a degree that the driver's reactions, motor skills, and judgment are substantially altered and the driver, therefore, constitutes a clear and substantial danger of physical injury or death to himself or herself or another person. Ark. Code Ann. § 5-65-102(4) (Supp. 2023).

Damron argues that considering Crownover's testimony regarding rising BAC and the fact that the 0.09 BAC result was not obtained until more than two hours after the stop, there was insufficient evidence to prove that his BAC was over the legal limit at the time he was operating the boat when the State failed to present evidence "as to the possible calculable effect of time" on his BAC. We disagree.

The State is not required to present expert testimony explaining the meaning of blood-alcohol content. *Sparks v. State*, 25 Ark. App. 190, 756 S.W.2d 911 (1988). In *Hayden*

4

*v. State*, 103 Ark. App. 32, 286 S.W.3d 177 (2008), the appellant similarly claimed that the State had failed to prove that his BAC was 0.08 or more at the time he was driving because test results of 0.099 and 0.096 were obtained more than an hour after the stop. The argument in *Hayden* that the appellant's alcohol level would have been rising at the time of the offense and peaking at the time of the test was, like here, unsupported by evidence about the changes in alcohol levels that occur after alcohol is consumed. Although Crownover agreed that if Damron "had just" consumed alcohol, his BAC would rise, he did not give any opinion regarding the effect Damron's drinking would have on his BAC more than two hours after the stop. The BAC result of 0.09 is sufficient to establish Damron's alcohol concentration at the time of the offense.

Moreover, the circuit court was also presented with evidence of intoxication to establish the other definition of BWI. Damron argues that the non-BAC evidence was insufficient because he passed two of three field-sobriety tests and there was no other evidence of impairment. However, the State presented evidence that Damron failed his field-sobriety testing, admitted drinking alcohol, smelled of alcohol, and drove the boat dangerously close to a jet ski. Crownover opined that Damron was intoxicated. Opinion testimony regarding intoxication is admissible, and it is the fact-finder's province to determine its weight and credibility. *Henry v. State*, 2011 Ark. App. 169, 378 S.W.3d 832. We hold that this evidence is sufficient to support the conviction for BWI.

II. *Consideration of Facts Not in Evidence*

Damron next argues that the circuit court considered facts not in evidence in finding him guilty. This allegation is based on the court's statement that

> for the reasons I stated previously, I'm going to deny the motion. From what I understand about alcohol absorption, if he drank the beers, as he said, one early and began drinking at 2:00 to 2:30, and his last beer was consumed a little before 6:30, and then when the test was given, there's no way he would have been at .09. Some - - but that's what he registered, so I'm going to find him guilty of DWI.

Damron contends that the court discredited his testimony on the basis of alcohol-absorption rates for which there was no evidence. We agree with the State, however, that Damron failed to preserve this argument for appeal.

To preserve an argument for appeal, there must be an objection in the circuit court that is sufficient to apprise the court of the particular error alleged, and the appellate court will not address arguments raised for the first time on appeal. *Vanesch v. State*, 343 Ark. 381, 37 S.W.3d 196 (2001). The law is well settled that to preserve an issue for appeal, a defendant must object at the first opportunity. *Mezquita v. State*, 354 Ark. 433, 125 S.W.3d 161 (2003). Damron contends that his argument for dismissal regarding rising BAC levels preserved this argument. While his sufficiency argument was preserved, we do not agree that his motion to dismiss preserved the separate argument he now raises that inadmissible evidence was considered. The purported consideration of inadmissible evidence did not arise until after Damron completed his argument for dismissal, and he made no objection thereafter. *See Rasmusen v. State*, 277 Ark. 238, 641 S.W.2d 699 (1982) (holding that defense's objection to question posed by State did not preserve argument on appeal that the trial court made misleading comments in the discussion following the objection).

Damron alternatively contends that his argument should be considered under the third or fourth *Wicks* exceptions to the contemporaneous-objection rule. *See Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980). The third *Wicks* exception applies when the circuit court should intervene on its own motion to correct a serious error. *White v. State*, 2012 Ark. 221, 408 S.W.3d 720. This exception is limited to only those errors affecting the very structure of the criminal trial, such as the fundamental right to a trial by jury, the presumption of innocence, and the State's burden of proof. *Id.* The fourth *Wicks* exception is implicated when the admission or exclusion of evidence affects a defendant's substantial rights. *Id.* Damron argues that evidence that was not presented was "admitted," which violated the confrontation clause and affected his substantial rights. Our case law is clear that *Wicks* presents only narrow exceptions that are to be rarely applied. *Id.* In *Witherspoon v. State*, 2020 Ark. App. 468, we noted that these exceptions are not intended to apply when a party simply fails to make a contemporaneous objection to an alleged confrontation-clause error. We decline to apply any of the *Wicks* exceptions here.

III. *Probable Cause for the Stop*

Damron also argues that the circuit court erred in finding that there was probable cause to stop his boat. In reviewing the denial of a motion to suppress, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical fact for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to the inferences drawn by the circuit court. *Brewer v.*

7

*State*, 2010 Ark. App. 275. We reverse only if the ruling is clearly against the preponderance of the evidence. *Id.*

The law regarding probable cause for traffic stops applies to cases involving boats. *Id.* In order to be valid, a traffic stop requires that the officer have probable cause to believe that a traffic violation has occurred. *Id.* Probable cause is defined as facts or circumstances within a police officer's knowledge that are sufficient to permit a person of reasonable caution to believe that an offense has been committed by the person suspected. *Lockhart v. State*, 2017 Ark. 13, 508 S.W.3d 869. In assessing the existence of probable cause, our review is liberal rather than strict. *Id.* Whether a police officer has probable cause to make a traffic stop does not depend on whether the driver was actually guilty of the violation that the officer believed to have occurred. *Id.*

Damron argues that there was no evidence to support a finding that a reasonable officer would conclude that he violated the law. We disagree. Crownover testified that he believed Damron was in violation of the law requiring him to keep a safe speed and distance and that he operated the boat negligently or recklessly. Pursuant to Arkansas Code Annotated section 27-101-202(1) (Repl. 2022), no person shall operate any motorboat in a reckless or negligent manner that endangers the life, limb, or property of any person. Crownover testified that Damron's boat was getting in the jet ski's space, that they were dangerously close to each other, that they appeared to be racing, and that a crash appeared imminent. These facts support a finding that Crownover had probable cause to believe that

8

a violation of section 27-101-202(1) had occurred.  Accordingly, the circuit court's ruling was not clearly against the preponderance of the evidence.

Affirmed.

GLADWIN and GRUBER, JJ., agree.

*Jeremy B. Lowrey*; and *Cooper & Bayless*, by: *Paul Bayless*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jacob H. Jones*, Ass't Att'y Gen., for appellee.