Larry CROMWELL *v.* STATE of Arkansas

CR 79-223                                        598 S.W. 2d 733
Supreme Court of Arkansas
Opinion delivered May 27, 1980

*John W. Achor*, Public Defender, by: *Theodore Holder*, Deputy Public Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *James F. Dowden*, Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. Cromwell was convicted by a jury of attempted capital murder, with a sentence of life imprisonment, and of aggravated robbery, with a sentence of imprisonment for 25 years. He argues two grounds for reversal.

The two offenses occurred, as part of the same incident, on October 19, 1978. On that day a man entered a small grocery store in Little Rock, used a pistol to hold up the proprietor, Willie Woods, and took the money in the cash register. The robber then ordered Woods to get down behind the counter. When Woods was almost prone the robber shot him in the chest, in what seems to have been intended as an execution type killing. The shot, however, was not fatal. Woods described his assailant to the police and at the trial some 11 months later he identified Cromwell as the criminal. Cromwell testified that he was elsewhere at the time of the incident and had nothing to do with it.

First, it is contended that paragraph (1) (a) of the capital murder statute is void for vagueness. Ark. Stat. Ann. § 41-1501 (1) (a) (Repl. 1977). This paragraph provides that a person commits capital murder if, in the commission of or attempt to commit rape, kidnapping, arson, vehicular piracy, robbery, burglary, or escape in the first degree, he causes the death of any person under circumstances manifesting extreme indifference to the value of human life. The next section of the Criminal Code provides, in almost identical language, that a person commits murder in the first degree if he commits or attempts to commit "a felony" in the same circumstances. § 41-1502 (1) (a). Hence under the literal language of the two sections Cromwell might have been charged either with capital murder or with first-degree

murder, because robbery is a felony and therefore fits the definition of each offense.

The appellant, in arguing the void-for-vagueness doctrine, relies upon the rule that the legislature must set reasonably clear guidelines for law enforcement officials and triers of fact, to prevent arbitrary and discriminatory law enforcement, *Smith* v. *Goguen*, 415 U.S. 566 (1974), and upon the companion principle that a vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with attendant dangers of arbitrary and discriminatory application. *Grayned* v. *City of Rockford*, 408 U.S. 104 (1972). It is insisted that our statutes are therefore void for vagueness, because the prosecuting attorney or the trier of fact may arbitrarily decide whether an accused is to be charged with or convicted of capital murder, a capital offense, or muder in the first degree, punishable by imprisonment only.

This argument, as applied to our statutes, is not sound. In the cases cited the statutes themselves were vague, leaving enforcement to the selective whim of the policeman, prosecutor, judge, or jury. For instance, in *Goguen* the court held that the language, "publicly . . . treats contemptuously the flag of the United States," did not define the offense with sufficient precision to give adequate warning of what conduct was prohibited. The definition of the offense was therefore being delegated to the law enforcement officials, who in that case sought to convict Goguen for having worn a small United States flag sewn to the seat of his trousers.

Here, by contrast, the appellant does not complain that the language of our statutes is vague. Those statutes, in plain words, prohibit one from causing the death of any person in the commission of various felonies, which are defined elsewhere in the Code. the other statutory language, "under circumstances manifesting extreme indifference to the value of human life," has already been upheld against a charge of vagueness. *Martin* v. *State*, 261 Ark. 80, 547 S.W. 2d 81 (1977).

Instead of arguing that our statutes themselves are

vague, the appellant isolates a separate consequence of the void-for-vagueness doctrine and insists that our statutes confer arbitrary power upon prosecutor and juries to select between capital murder and murder in the first degree.

The answer to this argument is that the possible exercise of such discretionary authority is not fatal to the statutes. for even in capital cases, which this one is not, the evil to be guarded against is the capricious selection of a group of offenders. *Gregg* v. *Georgia*, 428 U.S. 153, 199 (1976). In the first place, it is impossible to avoid the use of general language in the definition of certain offenses. *State* v. *Weston*, 255 Ark. 567, 501 S.W. 2d 622 (1973). Moreover, the prosecutor or grand jury is often compelled to choose one or two or more offenses, no matter how precise the statutes may be. For example, the conflicting testimony of eyewitnesses may, depending on their varying credibility, establish capital murder if the accused committed robbery but only murder in the first degree if he committed a lesser felony such as theft of property, battery, or aggravated assault. §§ 41-2103, -2203, -1601, and -1604. There can be no constitutional objection to the exercise of a reasonable discretion in that situation.

In the court below the trial judge solved the problem by taking Section 41-1502 (1) (a), defining murder in the first degree, to refer not to just any felony but only to any felony other than the seven specified in Section 41-1501 (1) (a), defining capital murder. On this point see the Comment to Instruction 1506, AMI Criminal (1979). For the guidance of the bench and bar we take this opportunity, when the death penalty is not involved, to express our disagreement with the trial judge's view. The Criminal Code was drafted by an able committee, which worked diligently for years. It was approved by the General Assembly after careful study. We are unwilling to say that the reference in Section 41-1502 (1) (a) to "a felony" was meant to exclude the seven felonies specified in the preceding section. The actual wording of the statute may have been chosen to lighten the possible punishment that might be imposed for conduct falling within the strict definition of capital murder — a consequence that might be acceptable both to the prosecution and to the defense. If that is not true in a particular case, presumably

the defense can ask that the State be required to elect between the two degrees. In any event, we find no constitutional infirmity in the overlapping of the two sections, because there is no impermissible uncertainty in the definition of the offenses.

The second point for reversal has to do with the admissibility of evidence. About a month after the commission of the offenses the prosecuting witness, Woods, identified Cromwell at a police line-up. That identification was challenged by a motion to suppress, but after a hearing the trial judge denied the motion, finding that the line-up would not taint an in-court identification by Woods. Before the trial Woods also saw Cromwell at a preliminary hearing and at a pretrial conference.

When the trial began, defense counsel indicated during his voir dire examination of the veniremen and in his opening statement to the jury that he would question Woods's in-court identification of Cromwell, because Woods had never seen Cromwell until the date of the robbery, which was 11 months before the trial. On the basis of that indicated line of defense Woods was permitted to testify, on direct examination during the State's case in chief, that he had never seen Cromwell before the robbery, but he had seen him on three occasions after that. No details were given, nor were any elicited by cross examination.

The evidence was admissible. We have frequently held that a prosecuting witness may testify that he saw or identified the defendant before or after the offense. *Bishop* v. *State*, 236 Ark. 12, 364 S.W. 2d 676 (1963); *French* v. *State*, 231 Ark. 677, 331 S.W. 2d 863 (1960); *Birones* v. *State*, 105 Ark. 82, 150 S.W. 416 (1912). That evidence is relevant, because a jury may reasonably believe that an in-court identification is more apt to be accurate if, for instance, the witness has known the accused for a long time or has seen him on other occasions. Details affecting the weight of such testimony may be brought out on cross examination. Of course, proof of an identification made at an improperly conducted line-up is not admissible. *Gilbert* v. *California*, 388 U.S. 263 (1967). Here, however, the trial court's order refusing to suppress the line-

up identification is not challenged.

In another line of cases, and before the adoption of Uniform Evidence Rule 801 (d) (1) (iii), Ark. Stat. Ann. § 28-1001 (Repl. 1979), we held that a third person, such as a police officer, cannot testify that the prosecuting witness identified the accused on an earlier occasion, if there has been no impeachment of the prosecuting witness. *Trimble* v. *State*, 227 Ark. 867, 302 S.W. 2d 83 (1957). We reviewed our cases in detail in *Spivey* v. *State*, 247 Ark. 752, 447 S.W. 2d 846 (1969), and declared our adherence to the rule of *Birones, Bishop,* and *French*. The *Spivey* cases controls this one.

Affirmed.