Raymond Allen COBLE *v.* STATE of Arkansas

CR 81-28                                  624 S.W. 2d 421

Supreme Court of Arkansas
Opinion delivered October 26, 1981
[Supplemental Opinion on Denial of Rehearing December 21, 1981.]

*Lessenberry & Carpenter,* by: *Thomas M. Carpenter; Barrett, Wheatley, Smith & Deacon,* by: *Tom D. Womack,* and *Anthony Bartels,* for appellant.

*Steve Clark,* Atty. Gen., by: *William C. Mann, III,* for appellee.

RICHARD B. ADKISSON, Chief Justice. Following a trial by jury appellant, Ronald A. Coble, was convicted of capital

felony murder and sentenced to life imprisonment without parole.

On the afternoon of January 28, 1980, at approximately 6:30 p.m., the body of Mrs. Bell Lloyd was found by her husband in their home near Jonesboro, Arkansas. She had been shot in the neck and upper chest with a .12 gauge shotgun. The victim's white Chevrolet automobile, a .32 caliber pistol, and approximately $100 worth of old coins were missing from the premises. The description and license number of the car were immediately broadcast over the police radio.

The owner of a liquor store in nearby Poinsett County heard this broadcast on his police scanner and realized the license number matched one that he had jotted down about 5:00 p.m. that afternoon. He had become suspicious when a man purchased a six-pack of Budweiser in bottles with old silver coins. He copied down the license number of the white Chevrolet which the man was driving. Upon hearing the broadcast he reported the incident to the police.

The description of a hitchhiker seen in the vicinity of the Lloyd residence at approximately 2:00 p.m. that afternoon was reported to the police. Later that evening officers learned that two men were selling old coins at the Dew Drop Inn at Marked Tree. The description of one of the men selling the coins matched the description of the hitchhiker seen near the Lloyd's residence at about the time of the crime. Having apparently determined that it was Coble who was selling the coins, Officers Graves, Morphis, Taylor, and Hallmark proceeded to Coble's residence, arriving there at about 12:30 a.m. Mrs. Gray, appellant's mother-in-law, answered the door. The officers asked to speak with the appellant. Mrs. Gray invited them in, they declined, but they waited on the porch after being told that Coble was in bed.

After about 15 minutes, Coble came to the porch. He went with the officers to a car parked in front of the residence to talk. It was determined that this car belonged to James Gray, Coble's brother-in-law, who also lived in the house. Officer Taylor asked Gray about a pistol that had been seen

in the floorboard of Gray's car; Gray stated that the pistol belonged to Coble but that he had not seen Coble with the pistol before that night. The officers confirmed by radio that this pistol fit the description of the one taken from the Lloyd residence. The officers then placed Coble in custody and transported him and James Gray to the Trumann Police Department where Gray was released and advised to come back in the morning to make a statement.

Later Coble was transported to the Craighead County Jail in Jonesboro. A lineup was held around noon on January 29, and Coble was identified by J. L. Windley as the hitchhiker he had dropped off near the Lloyd residence. The owner of the liquor store also viewed the lineup but was unable to identify the appellant.

Shortly after the lineup, while he was being fingerprinted and processed, Coble told Deputy Sheriff Howell that he wanted to speak with someone in authority. Howell called Sheriff Floyd Johnson. At 2:27 p.m. Sheriff Johnson, Deputy Prosecuting Attorney Parker, and Deputy Howell fully advised Coble of his rights under *Miranda* v. *Arizona*, 384 U.S. 436 (1966) and took his statement. Before the statement was taken, they asked appellant several times if he would like to speak to Attorney David Rees or some other attorney but Coble refused the offer.

Appellant first argues that the trial court erred in failing to suppress the statement given by the appellant. He contends he was arrested without a warrant in his home in violation of the Fourth Amendment and relies on *Payton* v. *New York*, 445 U.S. 573 (1980) and *Dunaway* v. *New York*, 442 U.S. 200 (1979).

In *Payton* the police, with probable cause but no arrest warrant, used crowbars to break open the door and enter the defendant's home when there was no response to their knock. The Court held that the Fourth Amendment prohibits police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest. In a companion case, *Riddick* v. *New York*, 445 U.S. 573 (1980), the Court held there was probable cause for an

arrest but the Fourth Amendment was violated when the police entered defendant's residence without consent and without an arrest warrant when a three year old child opened the door. In both of these cases evidence seized on the premises was suppressed as being the fruit of an illegal arrest.

In *Dunaway* the Supreme Court held that the police violated the defendant's Fourth Amendment rights when they seized him without probable cause and transported him to the police station for interrogation. The defendant's statement was suppressed as being the exploitation of an illegal arrest. The Court found no intervening event of significance to break the causal connection between the illegality and the confession. *See Brown* v. *Illinois*, 422 U.S. 590 (1975).

Here, however, Coble voluntarily came out of his residence to talk with police officers and voluntarily spoke with them in the car. There is no nonconsensual police conduct which characterized *Payton* and *Riddick*; neither is there an absence of probable cause which characterized *Dunaway*.

Although it is not clear from the record whether there was a stipulation that probable cause existed at the time of Coble's arrest, the record does reflect that there was, in fact, probable cause. Probable cause exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested. *Brinegar* v. *United States*, 338 U.S. 160 (1949); *Carroll* v. *United States*, 267 U.S. 132 (1925); *McGuire* v. *State*, 265 Ark. 621, 580 S.W. 2d 198 (1979). When the officers went to Coble's residence they were able to verify the description they had of the hitchhiker seen in the vicinity of the victim's home, as well as the description of the person selling coins at the Dew Drop Inn. These facts, coupled with Gray's statement regarding the pistol and the fact that the pistol found in the car at Coble's residence matched the

description of the pistol taken from the victim's home, gave the officers probable cause to arrest Coble.

Appellant also argues that his statement should be suppressed because his attorney was not notified that he wished to make a statement. It is not clear from the record whether Coble had counsel other than for purposes of the lineup, but we need not make this determination because Coble not only waived his right to counsel but also initiated the contact with the police that produced the statement. An accused can waive his right to counsel if it is done voluntarily, knowingly, and intelligently. *Johnson* v. *Zerbst*, 304 U.S. 458 (1938). The admissibility of statements obtained after a person in custody has decided to remain silent depends, under *Miranda,* on whether his right to cut off questioning was scrupulously honored. *Michigan* v. *Mosley,* 423 U.S. 96 (1975). Also, although a person has counsel or invokes his right to counsel, he may be further interrogated if he initiates further communication, exchanges, or conversations with the police. *See Edwards* v. *Arizona,* 451 U.S. 477, 101 S. Ct. 1880 (1981); *Rutledge* v. *State,* 263 Ark. 781, 567 S.W. 2d 283 (1978); *Escobedo* v. *Illinois,* 378 U.S. 478 (1964).

The evidence is undisputed that during fingerprinting Coble initiated contact with the police by asking if he could speak with someone in authority. The deputy contacted Sheriff Johnson who arrived some 30 minutes later. Again the evidence is undisputed that the sheriff fully advised Coble of his *Miranda* rights. The sheriff and deputy prosecuting attorney repeatedly and earnestly advised Coble of his right to have an attorney present before questioning. Deputy Prosecutor Parker specifically asked appellant, "Do you want David Rees here during your statement, or would you prefer to give your statement without him? Just what do you want to do?" Appellant replied, "I will just give it without him."

When an in-custody statement is challenged, the State has the burden of proving by a preponderance of the evidence that it was voluntarily given. This determination is made based upon the totality of the circumstances surrounding the taking of the statement. *Giles* v. *State,* 261 Ark. 413,

549 S.W. 2d 479 (1977). On appeal, we make an independent determination of this issue and affirm the finding of the trial court unless we can say its ruling was clearly erroneous. *Degler* v. *State*, 257 Ark. 388, 517 S.W. 2d 515 (1974). The trial court's finding that appellant's statement was voluntarily given is supported by substantial evidence and is not erroneous.

The appellant argues that Ark. Stat. Ann. § 41-1501 (1) (a) (Repl. 1977) and Ark. Stat. Ann. § 41-1502 (1) (a) overlap and are, therefore, unconstitutionally vague. These statutes are not vague, since they clearly set out what acts are prohibited. We have found no constitutional infirmity in the overlapping of the two sections because there is no impermissible uncertainty in the definition of the offenses. *Cromwell* v. *State*, 269 Ark. 104, 598 S.W. 2d 733 (1980); *Earl* v. *State*, 272 Ark. 5, 612 S.W. 2d 98 (1981).

Next appellant contends that the trial court erred in allowing the jury to be qualified under the procedure set forth in *Witherspoon* v. *Illinois*, 391 U.S. 510 (1968) because first, a death qualified jury is more conviction prone and second, because such a jury is not composed of a fair cross section of the community. Appellant also contends he is entitled to have two juries sit in his case — the first to decide the issue of guilt and the second to determine punishment. After reviewing the evidence in this case, we cannot say that the trial judge's findings on these points were clearly erroneous. All of these issues have been previously, in some way, considered by this Court. *Giles* v. *State, supra; Venable* v. *State*, 260 Ark. 201, 538 S.W. 2d 286 (1976); *Hobbs* v. *State*, 273 Ark. 125, 617 S.W. 2d 347 (1980).

Finally, appellant asserts that he is entitled under Ark. Stat. Ann. § 43-2006 (Repl. 1977) to reimbursement for expenses for the use of expert witnesses in his behalf. There is no evidence in the record that a subpoena was issued for witnesses under this statute, therefore, the issue is not reviewable on appeal.

This Court has reviewed all objections pursuant to Rule 36.4, Ark. Rules Crim. Proc., Vol. 4A (Repl. 1977) and Rule 11 (f), Rules of Supreme Court, Vol. 3A (Repl. 1979) and finds no error.

Affirmed.

PURTLE, J., concurs.

JOHN I. PURTLE, Justice, concurring. I concur in the result reached in this case but for what I believe to be a different reason. I am unable to determine from the majority opinion the exact reason for affirmance. The exclusionary rule is discussed in general terms; however, I cannot understand its exact application to the facts of this case. The Fourth, Fifth and Sixth Amendments to the United States Constitution and Art. 2 §§ 8 through 15 of the Arkansas Constitution provide generally for the protection of the rights and lives of citizens. These rights were not, generally speaking, strictly enforced until such decisions as *Mapp* v. *Ohio*, 367 U.S. 643 (1961); *Miranda* v. *Arizona*, 384 U.S. 436 (1966); *Escobedo* v. *Illinois*, 378 U.S. 478 (1964); *Jackson* v. *Denno*, 378 U.S. 368 (1964); and *Witherspoon* v. *Illinois*, 391 U.S. 510 (1968), were handed down by the United States Supreme Court. We are bound by the decisions of the Supreme Court of the United States.

Based upon the more recent decisions of *Dunaway* v. *New York*, 442 U.S. 200 (1979) and *Payton & Riddick* v. *New York*, 455 U.S. 579 (1980), it may be stated that a person's home cannot be invaded without a search warrant or arrest warrant, absent exigent circumstances, even if probable cause is absolutely known to exist. Neither may a person ordinarily be seized without probable cause. Therefore, if the officers had probable cause to arrest the appellant before they went to his home, they were required to obtain a warrant. Although both the state and the appellant appear to agree that probable cause existed prior to the trip to appellant's home, I do not believe the record supports this statement. On the other hand, if they did not have probable cause at the time they took custody of the appellant, then the arrest was likewise illegal. Violation of the above rules of law would exclude all evidence and statements obtained by such illegal seizure as it would be in violation of the Fourth Amendment. Even if the Miranda warning and all implications of the Fifth Amendment were fairly and accurately given to the appellant, the confession would not be legalized and therefore would not be admissible if the arrest was in

violation of the Fourth Amendment.

In my opinion, the statement given by appellant was properly admitted only because probable cause developed when the officers went to appellant's house and discovered a pistol which fit the description of the murder weapon. This discovery, along with other prior suspicious circumstances, gave rise to probable cause. The only reason the arrest is not in violation of the Fourth Amendment is because of the exigent circumstances which existed at the time. The officers were 25 miles from the nearest magistrate and it was in the middle of the night. It was very probable that if they left to obtain a warrant the suspect would not have been there when they returned. Thus, we have an exception to the exclusionary rule. Had the probable cause been developed as a result of seizing the appellant or taking him into custody then the exclusion would still apply. See *Dunaway* v. *New York*, supra.

Supplemental Opinion on Denial of Rehearing
delivered December 21, 1981

PER CURIAM. Petition for Rehearing denied as to the merits of the case. The trial court is reinvested with jurisdiction to determine the issue of partial reimbursement of expenses of out-of-state witnesses.