Darrell Wayne HILL *v.* STATE of Arkansas

CR 81-18                                        628 S.W. 2d 285

Supreme Court of Arkansas
Opinion delivered February 8, 1982
[Rehearing denied March 15, 1982.]

76

*Bob Keeter* and *William H. McKimm,* for appellant.

*Steve Clark,* Atty. Gen., by: *Leslie M. Powell,* Asst. Atty. Gen., for appellee.

RICHARD B. ADKISSON, Chief Justice. On July 11, 1980, following a jury trial, appellant, Darrell Wayne Hill, was convicted and sentenced for capital felony murder (death), kidnapping (50 years), and aggravated robbery (50 years) in connection with offenses against Donald Lee Teague; and

for attempted capital murder (life), kidnapping (50 years), and aggravated robbery (50 years) in connection with offenses against E. L. Ward. The 50-year sentences were set to run consecutively to the life sentence.

We affirm the conviction and sentence for capital felony murder but set aside the lesser included offenses of kidnapping and aggravated robbery in connection with offenses against Donald Lee Teague. Ark. Stat. Ann. § 41-105 (1) (a) and (2) (a) (Repl. 1977) prohibit the entry of a judgment of conviction on capital felony murder or attempted capital felony murder and the underlying specified felony or felonies. *Swaite* v. *State,* 272 Ark. 128, 612 S.W. 2d 307 (1981); *Singleton* v. *State,* 274 Ark. 126, 623 S.W. 2d 180 (1981). Generally, this Court will not consider errors raised for the first time on appeal; however, as we stated in *Singleton, supra,* in death cases we will consider errors argued for the first time on direct appeal where prejudice is conclusively shown by the record and this Court would unquestionably require the trial court to grant relief under Rule 37.

We affirm the convictions and sentences for attempted capital felony murder, kidnapping, and aggravated robbery in connection with offenses against E. L. Ward. The objection that kidnapping and aggravated robbery are offenses included in the offense of attempted capital felony murder was not raised in the lower court. This Court will not consider this issue when raised for the first time on appeal except in death cases. *Rowe* v. *State,* 271 Ark. 20, 607 S.W. 2d 657 (1980). Also *see Rowe* v. *State,* 275 Ark. 37, 627 S.W. 2d 16 (1982).

I

On February 7, 1980, at approximately 2:00 p.m. appellant drove into E. L. Ward's Service Station in Pencil Bluff, Montgomery County, in a maroon Thunderbird. Ward checked his radiator and filled his car with gas. At this time Donald Teague, a Game and Fish Commission Officer, drove up, also wanting gas, so Ward went inside the garage to clear the pumps. Appellant, who was waiting inside the garage, pulled a gun on Ward and demanded his money. He

then ordered Ward to put the money from the cash register into a money bag along with his wallet. At this time Teague entered the garage, and appellant pointed the gun at Teague, told him to put his billfold in the money bag, and told both men that they were going for a ride. Teague was instructed to drive the car and Ward to bring the money bag. While riding, appellant took the money from Ward's wallet and put it in his pocket. Teague was forced to drive to a gravel road off of Highway 88. Appellant then had Teague stop the car, marched the men into some weeds, and forced them to lie down with their hands behind them. Appellant shot Teague several times, killing him. Ward begged him to quit shooting, but appellant then shot at Ward four times, wounding him. Ward dropped into the weeds and did not move or speak until appellant had driven away. He then hollered at Teague, who did not respond, so he crawled back to the road. A pulpwood driver found him there later that afternoon. Ward gave the police a description of his assailant and the car he was driving before he was rushed to a hospital in Hot Springs.

That afternoon at 4:05 p.m. law enforcement offices in the surrounding area began receiving NCIC (National Crime Information Center) radio dispatches regarding these crimes. The Hot Springs Police Department broadcast the description of a white male, 45 to 50 years old, medium build, 160 lbs., rough skinned face, black hair, last seen wearing a gray suit with a blue shirt; vehicle and license described as late model Ford Thunderbird, maroon in color, with dark blue or black lettering on a white license plate. The occupant was described as being armed and extremely dangerous.

At 6:25 p.m. Hot Springs Police Officer Buck observed a vehicle matching this description with a white Oklahoma license plate with dark letters going westbound on Grand in Hot Springs; he radioed in that he was following the car. He stopped the vehicle at about the same time Officer Ward arrived to back him up. Officer Buck used a public address system to advise appellant to step out of the car and keep his hands in plain sight. Officer Buck conducted a frisk search of appellant for weapons. Meanwhile, Officer Ward searched

the immediate area of the car where appellant had been sitting, finding a brown paper sack containing a loaded Charter Arms .38 Special and a large quantity of coins under the front seat, driver's side. Appellant was then placed in Officer Buck's vehicle and transported to the police station at approximately 6:45 p.m. Neither of these officers testified regarding a description of the appellant before he was searched: neither while appellant was inside the car, nor after he was directed to stand behind it.

The evidence as set out above and the positive results of the ballistics tests on the gun found in appellant's car lead us to conclude that appellant's convictions were supported by overwhelming evidence of guilt.

## II

Appellant argues that the stop and search of his vehicle by the police was unreasonable and that the pistol seized from under the driver's seat should have been suppressed as the fruit of an illegal search. We disagree. The search of the car was reasonable under the circumstances.[1] Rule 3.1, Ark. Rules Crim. Proc., Ark. Stat. Ann., Vol. 4A (Repl. 1977) provides:

Rule 3.1 Stopping and Detention of Person: Time Limit.

A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he *reasonably suspects* is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require

---

[1]Officer Ward testified at the hearing on the motion to suppress that, as soon as appellant got out of the car, both he and Officer Buck immediately recognized him as fitting the description of the suspect as broadcast over the police radio. The search, therefore, was justified as being incident to an arrest and permissible under *New York* v. *Belton,* 450 U.S. 1028, 101 S. Ct. 2860 (1981).

the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense. (Emphasis added)

Did the officer reasonably suspect the appellant had committed a felony? Rule 2.1 defines reasonable suspicion as:

[A] suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion.

The courts have used various terms to describe how much cause or suspicion is necessary or reasonable in order to stop a person or vehicle. The common thread which runs through the decisions makes it clear that the justification for the investigative stops depend upon whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating the person or vehicle may be involved in criminal activity. *U.S.* v. *Cortez,* 449 U.S. 411 (1981); *Michigan* v. *Summers,* 450 U.S. 905, 101 S. Ct. 2587 (1981); *Terry* v. *Ohio,* 392 U.S. 1 (1967).

Here the police had reasonable suspicion to make an investigatory stop of appellant's late model maroon Ford Thunderbird exhibiting an Oklahoma license plate with a white background and dark letters. The car matched the description of the police broadcast. It was not likely that another vehicle of that description was in the Montgomery-Garland County area at that time. Also, the crimes had just recently been committed in the small community of Pencil Bluff in neighboring Montgomery County.

Since the investigatory stop was justified, the police were then allowed to make a limited search for weapons to protect themselves from attack by a suspect they had every

## ERRATA

*275 ARKANSAS REPORTS at page 80*

Detach at perforation, moisten the back, and paste over the fifth line of the first full paragraph on page 80 of *Hill v. State:*

the investigative stops depends upon whether, under the

reason to believe was armed and very dangerous. *Adams v. Williams*, 407 U.S. 143 (1972). Rule 3.4, Ark. Rules Crim. Proc. specifically authorizes a search for weapons in a situation such as existed here:

> If a law enforcement officer who has detained a person under Rule 3.1 reasonably suspects that the person is armed and presently dangerous to the officer or others, the officer or someone designated by him may search the outer clothing of such person *and the immediate surroundings* for, and seize, any weapon or other dangerous thing which may be used against the officer or others. In no event shall this search be more extensive than is reasonably necessary to ensure the safety of the officer or others. (Emphasis added)

This rule is consistent with the rule set forth in *Terry v. Ohio, supra,* which emphasizes that the purpose of the protective search is wholly for the safety of the police officer:

> We are now concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties.

In *Terry* the Court dealt specifically with a limited protective search of a pedestrian. However, the principles enunciated in that case are wholly consistent with the concept that an automobile's passenger compartment may be the subject of a limited search, in circumstances such as those presented here, for the protection of officers who otherwise might be endangered.[2] *See e.g. United States v. Thomas,* 314 A. 2d 464 (D.C. App. 1974).

---

[2]In instances where a person is arrested in an automobile, *New York v. Belton, supra,* standardized the concept of what is the immediate surrounding area for the purpose of a protective search to include the entire passenger compartment of the automobile in which the person

The search here was completely reasonable when considered under the totality of the existing circumstances. The officers would have taken an unnecessary risk if they had attempted to talk with the appellant before searching him and the accessible areas of his car; removing appellant from his car was a prerequisite to the safety of the officers in making such a search. Although appellant was standing behind the car with his hands on the trunk at the time of the search, the mere fact of appellant's removal from the car did not remove the possible danger to the officers and thereby obviate the necessity for the search. It was certainly reasonable to believe that a suspect believed to have kidnapped, robbed, and executed a Game and Fish Officer, and, simultaneously, attempted to do the same thing to another person was capable of breaking for a weapon inside his car, and probably would have been highly motivated to do so. Here, the limited search of the car was both "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry* v. *Ohio, supra.*

## III

Appellant argues that the trial court erred in not granting his motion for a change of venue. Ark. Stat. Ann. § 43-1501 (Repl. 1977) provides:

> Any criminal cause pending in any circuit court may be removed . . . whenever it shall appear . . . that the minds of the inhabitants of the county in which the cause is pending are so prejudiced against the defendant that a fair and impartial trial cannot be had therein.

To prove prejudice in this case appellant introduced four issues of the local newspaper which had carried stories about the crime. Appellant did not allege or prove any television or radio coverage of the crime. At the special hearing on the change of venue appellant also introduced

---

arrested was located. Since the purpose of the protective search is for the safety of the police officer, the rationale of *Belton* must be equally applicable to searches of automobiles after investigatory stops even though, as in *Belton,* the suspect is no longer inside the automobile.

testimony from six witnesses who testified that they did not think defendant could receive a fair trial in Montgomery County. Three witnesses for the State testified that he could. The trial judge specifically found that none of the defense witnessed showed that they were cognizant of prejudice existing throughout the whole county, but merely portions of the county. In *Bailey* v. *State*, 204 Ark. 376, 163 S.W. 2d 141 (1942) we stated that the statute which provides methods of proving prejudice, Ark. Stat. Ann. § 43-1502 (Repl. 1977), contemplates that the witnesses should have fairly accurate information concerning the state of mind of the inhabitants of the entire county.

A motion for a change of venue is directed to the sound discretion of the trial court and is not subject to reversal except for an abuse of that discretion. *Rush* v. *State*, 238 Ark. 149, 379 S.W. 2d 29 (1964). Under the facts of this case we cannot say that the trial court abused his discretion.

## IV

Appellant argues that the trial court erred in not excusing certain jurors for cause. We recently held in *Conley* v. *State*, 270 Ark. 886, 607 S.W. 2d 328 (1980) that in order to preserve this point for appeal appellant must have exhausted his peremptory challenges and must state for the record that there is someone actually sitting on the jury that he would have stricken if he had had another peremptory challenge. Also, it must appear from the record that the trial judge should have excused the juror for cause.

Here, the record reflects that appellant did exhaust his peremptory challenges, and that appellant objected to juror Reed who sat on the jury. However, the trial court was correct in not striking juror Reed for cause. Reed stated on *voir dire* that she was related to one of the victims in a complicated way, but the record is silent on how close the relationship actually was. Defense counsel's reason for asking the court to strike her for cause was that she had stated that "Anybody that is brought in is under suspicion either if they are innocent or guilty; they are just as much guilty as they are innocent when you pick them up or they wouldn't

be picked up in the first place." After this statement, however, the court advised her as to the presumption of innocence. She then stated that she understood the law to be innocent until proven guilty, and said she could follow this law. This juror was sufficiently rehabilitated by the trial court so that we cannot say it was error to not strike her for cause.

Appellant also argues it was error to allow the State to peremptorily challenge two jurors who expressed opposition to the death penalty. These jurors were not excused for cause by the court but were peremptorily stricken by the State. Under such circumstances no explanation is necessary as to why a potential juror is being excused.

## V

Appellant argues that the trial court erred in refusing (1) to grant his motion to make the victim, Mr. Ward, talk with defense attorneys, and (2) in refusing to allow defense attorneys to *voir dire* the sheriff concerning a conversation between the sheriff and a deputy in which the sheriff allegedly stated that "They will probably have me on trial in the morning concerning Mr. Ward."

The trial court refused to order Mr. Ward to discuss the case with defense counsel, but suggested that the prosecuting attorney furnish to defense counsel the substance of Mr. Ward's testimony whereupon the prosecuting attorney delivered to defense counsel a statement Mr. Ward had given to the state police. At trial, Mr. Ward testified that no one had told him not to speak with defense counsel. He explained that he had talked to defense counsel over the phone, but that he wasn't going to tell anyone anything over the phone, and that he wasn't going to talk to defense counsel unless the prosecuting attorney was present.

We cannot say the trial court abused its discretion in declining defense counsel's request to compel Mr. Ward to discuss the case with him or in refusing defense counsel's request to *"voir dire"* the sheriff regarding his conversation with the deputy. Appellant made no showing as to what

information was sought by these motions or that a favorable ruling by the court would materially aid in the preparation of the defense. Nor did appellant show that he was in any way prejudiced by the court's actions in denying the motions.

## VI

Appellant argues that reversible error was committed when a state witness referred to appellant's prison records during the guilt-innocence phase of the trial. The state's witness, a psychiatrist with Arkansas State Hospital, testified that his psychiatric diagnosis of appellant was based on personal interviews and various psychological examinations that had been administered to appellant. He was then asked if there were any other tools he used in forming his opinion. He answered, "I did have the results of previous examinations conducted at the Vinita State Hospital. I also had access to his prison records." Defense counsel moved for a mistrial. The trial court then admonished the jury that they must not consider the witness's statement.

This cautionary instruction to the jury made harmless any prejudice that may have occurred and this is especially true in view of the overwhelming evidence of guilt. Declaring a mistrial is an exceptional remedy to be used only where any possible prejudice cannot be removed by an admonition to the jury. *Cobb* v. *State*, 265 Ark. 527, 579 S.W. 2d 612 (1979). The trial court is granted a wide latitude of discretion in granting or denying a motion for mistrial, and the decision of the trial court will not be reversed except for an abuse of that discretion or manifest prejudice to the complaining party. *Brown* v. *State*, 259 Ark. 464, 534 S.W. 2d 207 (1976). *Dean* v. *State*, 272 Ark. 448, 615 S.W. 2d 354 (1981).

## VII

Appellant argues that the photographs of the bullet wound in Teague's head should not have been admitted. We disagree. The picture was not shocking or grotesque and was not likely to unfairly prejudice or inflame the jury. The

question of admissibility of photographs lies largely in the sound discretion of the trial court. *Tanner* v. *State*, 259 Ark. 243, 532 S.W. 2d 169 (1976).

## VIII

Appellant argues that the trial court erred in limiting the testimony of Reverend Nixon, a defense witness in the penalty phase of the trial. Reverend Nixon attempted to testify to appellant's charitable acts which appellant had related to him in a two-hour conference before trial. The trial court sustained the State's objection to Reverend Nixon's testimony that appellant wanted to donate a kidney.. The court stated at a bench conference that appellant could testify if he so desired. Counsel for appellant was then encouraged to continue examining the witness, but declined to do so.

Ark. Stat. Ann. § 41-1301 (4) permits the introduction of evidence as to any mitigating circumstances in a capital murder case regardless of its admissibility under the rules of evidence. However, this statute was not designed to create a vehicle for intentional circumvention of the rules of evidence. The rules of evidence should be followed when possible. In this case the witness was available to testify and there was no reason for the admission of this hearsay testimony.

Appellant also argues that Reverend Nixon should have been allowed to testify as to the religious and ethical considerations applicable to the death penalty. Religious and philosophical approaches to the death penalty are not relevant as mitigating evidence. *Franklin* v. *State*, 245 Ga. 141, 263 S.E. 2d 666 (1980).

## IX

Appellant argues that it was error to allow the State to prove, during the penalty phase, three prior convictions that did not involve threat or violence.

For purposes of sentence enhancement as a habitual

offender, the State proved that appellant had been convicted of five prior felonies pursuant to Ark. Stat. Ann. § 41-1001 (Repl. 1977):

(2) A defendant who is convicted of a felony and who has previously been convicted of four (4) or more felonies, or who has been found guilty of four (4) or more felonies, may be sentenced to an extended term of imprisonment as follows: . . .

Of these five prior convictions the State used two robbery convictions to prove aggravating circumstances under Ark. Stat. Ann. § 41-1301 (Repl. 1977). This statute provides that if a defendant is found guilty of capital murder, the jury may hear evidence as to aggravating circumstances. Prior offenses for purposes of aggravating circumstances are specifically limited by Ark. Stat. Ann. § 41-1303 (Repl. 1977) to offenses involving threat or violence:

Aggravating circumstances. — Aggravating circumstances shall be limited to the following:

. . . .

(3) the person previously committed another felony an element of which was the use or threat or violence to another person or creating a substantial risk of death or serious physical injury to another person; . . .

Appellant argues that the jury may have improperly considered the convictions introduced for enhancement purposes, some of which did not involve threat or violence, when they were considering aggravating circumstances. Apparently, appellant's position is that there should be two separate hearings on sentencing when capital and non-capital offenses are being tried together. This argument has no merit. Our statutes merely provide for a bifurcated procedure under which sentencing is separate from the determination of guilt or innocence. *See State* v. *Green-awalt,* 128 Ariz. 150, 624 P. 2d 828 (1981). Furthermore, the court clearly instructed the jury that they were to consider only the two robbery convictions as aggravating circum-

stances. They were also instructed that the other convictions were to be considered only for enhancement purposes on the charges of robbery, kidnapping, and attempted murder.

Appellant further argues that the court erred in allowing the State to submit the conviction for "unauthorized use of a motor vehicle after former conviction of a felony" for purposes of sentence enhancement under Ark. Stat. Ann. § 41-1001. Appellant argues that this conviction should not have been admitted since there was no proof that appellant was represented by an attorney when he was convicted of the "former felony." There is no merit to this argument. The record reflects that appellant was represented by an attorney when he was convicted of "unauthorized use of a motor vehicle after former conviction of a felony." This is the crime that the State used for enhancement purposes. The statute only requires proof of a prior conviction, not the underlying elements of the conviction.

Appellant also argues that the jury may have improperly considered the six findings of guilt that they had just entered as felonies for purposes of enhancement and aggravation during the penalty phase of the trial. We find no merit to this argument. We can assume that the jury understood the court's instructions and understood the verdict forms which refer to conviction for *previous* felonies.

We have examined all objections pursuant to Rule 11 (f), Rules of the Supreme Court, Ark. Stat. Ann., Vol. 3A (Repl. 1979) and find no error. *cf. Singleton v. State, supra.*

Affirmed in part; reversed in part.

HICKMAN, J., concurs. See *Singleton v. State,* 274 Ark. 126, 623 S.W. 2d 180 (1981).

HOLT and DUDLEY, JJ., concur.

PURTLE, J., concurs in part; dissents in part.

ROBERT H. DUDLEY, Justice, concurring. I concur in the result and agree with the reasoning expressed on all but one

issue — the search. On that issue the majority opinion sanctions the search of the passenger compartment and the resulting seizure of evidence on the basis of a search incident to an arrest. That part of the holding disregards the Fourth Amendment because an investigatory stop does not require probable cause. In a footnote the majority opinion states that the search also can be justified as a search incident to arrest. That latter reason is the only basis on which this case can be sustained.

"It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry* v. *Ohio,* 392 U.S. 1 (1968) quoted in *Michigan* v. *Summers,* 450 U.S. 905, 101 S. Ct. 2587 (1981). Stopping an automobile and detaining its occupants constitutes a seizure within the meaning of the Fourth Amendment. *Delaware* v. *Prouse,* 440 U.S. 648 (1979). In this case there are two seizures, seizure of the person and seizure of the evidence. The Supreme Court of the United States has treated the two in differing ways. Seizure of the person involves a higher governmental interest than does seizure of evidence. The former allows an official intrusion for the intense governmental interest of protecting the safety of the arresting officer while the latter allows a lesser intrusion based only upon the governmental interest in preventing the concealment or destruction of evidence. The Court has traditionally limited the reach of any Fourth Amendment exception to that which is necessary to accommodate the identified needs of society. *Arkansas* v. *Sanders,* 442 U.S. 753 (1979).

The difference between the two seizures is illustrated by stating the general rule for each. An arrest, or seizure of a person, without a warrant is valid only when the arresting officer has reasonable grounds to believe that the arrested person has committed a felony, *Johnson* v. *State,* 249 Ark. 208, 458 S.W. 2d 409 (1970); *United States* v. *Di Re,* 332 U.S. 581 (1948): *Johnson* v. *United States,* 333 U.S. 10 (1948), while a seizure of evidence without a warrant is, per se, unreasonable. *Katz* v. *United States,* 389 U.S. 347 (1967).

The Supreme Court of the United States has recognized

four exceptions, which are material to this case, where warrantless seizures of the person can be based on less than probable cause and still comply with the reasonableness standard of the Fourth Amendment.

First, in *Terry* v. *Ohio*, supra, a limited stop and frisk was approved. Second, in *Adams* v. *Williams*, 407 U.S. 143 (1972) a stop was approved to investigate an informant's tip that the person stopped was armed and carrying narcotics. Third, in *United States* v. *Brignoni-Ponce*, 422 U.S. 873 (1975), the Court held that border patrol officers may make investigatory stops of vehicles near the country's borders if there are articulable facts that reasonably warrant a suspicion that the vehicle contains illegal aliens. Fourth, in *United States* v. *Cortez*, 449 U.S. 411 (1981), the Court held that police could make an investigatory stop where there is an objective manifestation that the person is, or is about to be, engaged in criminal activity. Again, the investigatory stop does not have to be based on probable cause, it can be based upon the lesser standard of reasonable suspicion. Not one of these cases discussing a warrantless arrest upon only a reasonable suspicion intimates that an accompanying search and seizure of evidence can go beyond protection of the police officer's safety.

A seizure of evidence without a warrant is, per se, unreasonable. The Supreme Court of the United States has set forth only one narrowly drawn exception where a seizure of evidence can be based on less than probable cause. It is the protective search doctrine set out in *Terry* v. *Ohio*, supra, and *Adams* v. *Williams*, supra. It authorizes a search of the clothing and that area which is immediately reachable by the arrested person. The basis of this exception is that the arresting officer has every right to assure himself that the person does not have within reach a weapon, although the weapon may be evidence. The rationale of this exception is applicable to an investigatory stop, an arrest, a frisk, or any other seizure. It was applicable to the case before us and the frisk of the appellant was obviously valid. If a gun had been discovered during the frisk, it would have been admissible evidence. However, the appellant had been behind his car, had already been frisked and was about to be placed in the

arresting officer's car when a second officer conducted a search of the interior of appellant's car. The search of the interior of the car was not necessary for the officer's protection. It was necessary only to prevent the concealment or destruction of evidence. See A. R. Crim. P. 3.4, Vol. 4A (Repl. 1977).

All cases approving a warrantless search to prevent the concealment of evidence are synthesized with probable cause. Until probable cause is shown the warrantless search is narrowly limited to the governmental interest or protecting the police officer. After the probable cause standard is met the Court has not so narrowly defined the governmental interest and, as a result, the sanctioned area of the search is not as narrow. The Court has stated that a warrantless search of an automobile can be valid where the police have probable cause to believe the vehicle contains evidence of a crime. The governmental interest causing the Court to authorize this exception is the mobility of an automobile and the concealment of evidence. *Carroll* v. *United States,* 267 U.S. 132 (1925); *Arkansas* v. *Sanders,* supra; *Colorado* v. *Bannister,* 449 U.S. 1 (1980).

There is also the "automobile exception" where the scope of a search incident to a lawful custodial arrest, as opposed to investigatory stop, extends over the entire passenger compartment of the automobile in which the person arrested was riding. *New York* v. *Belton,* 450 U.S. 1028, 101 S. Ct. 2860 (1981). Generally, however, the scope of a search incident to a lawful arrest is governed by the principles set forth in *Chimel* v. *California,* 395 U.S. 752 (1969). These exceptions, based on probable cause, sanction a limited search to prevent the concealment or the destruction of evidence. While this area of search is limited, it is broader than the very narrow area of protective search based only upon reasonable suspicion. The reason is that the higher standard of probable cause allows the sanctioning of a greater governmental interest without violating the reasonableness clause of the Fourth Amendment.

The exceptions announced in *Carroll, Arkansas, Colorado, New York* and *Chimel* have two governmental interest bases; first, the need to protect the officer and,

second, the need to prevent the concealment or destruction of evidence. The first basis can be authorized by reasonable suspicion, while the second is authorized only when there is probable cause either for the arrest or for believing the vehicle contained evidence of a crime. Yet, the majority opinion sanctions a search to prevent the concealment of evidence, not on arrest and probable cause, but on an investigatory stop and reasonable suspicion. That result is based upon the fallacious assumption that a valid exception to the Fourth Amendment for the seizure of a person on less than probable cause creates a second exception of equal standing for the seizure of evidence. Such a double exception swallows the general rule that Fourth Amendment seizures of evidence are reasonable only if based on probable cause.

In the case before us the police had probable cause to arrest appellant, as opposed to stop to investigate, and that is the only basis upon which the search of the passenger compartment of the automobile can be sustained. I would affirm on that basis. See *New York* v. *Belton,* supra.

I am authorized to state that Mr. Justice HOLT joins in this opinion.

JOHN I. PURTLE, Justice, concurring in part, dissenting in part. I concur in that part of the majority opinion which affirms the sentence of capital felony murder wherein the penalty was set at death by electrocution. Also, I agree that it is plain error for the court to have sentenced the appellant to the lesser included offense of kidnapping and aggravated robbery in connection with the death of Donald Lee Teague.

I dissent from that part of the majority opinion which fails to apply the plain error rule to the lesser included charges in the case involving E. L. Ward. For the Ward episode the court sentenced the appellant for attempted capital murder, kidnapping and aggravated robbery. Although it is a mystery how he is going to serve any of these sentences if he is put to death, I nevertheless would like to see the record kept straight. By failing to recognize plain error at this time we are simply prolonging this case because we know with absolute certainty that the case is going to come

back to us under a Rule 37 Petition and in all likelihood another full appeal. If we follow our present opinions, we will at that time set aside these sentences just as we finally did in the case of *Rowe* v. *State,* 275 Ark. 37, 627 S.W. 2d 16 (1982). We had also corrected the matters in *Swaite* v. *State,* 272 Ark. 128, 612 S.W. 2d 307 (1981); *Singleton* v. *State,* 274 Ark. 126, 623 S.W. 2d 180 (1981); and *Earl* v. *State,* 272 Ark. 5, 612 S.W. 2d 98 (1981).

Because of the foregoing reasons I would correct the sentence imposed in this case by deleting the convictions of aggravated robbery and kidnapping with regard to the offenses against E. L. Ward as we did with the same charges relating to the offenses against Donald Lee Teague.