Jerry Don OWENS *v.* STATE of Arkansas

CR 84-36                                675 S.W.2d 834

Supreme Court of Arkansas
Opinion delivered October 1, 1984

*William R. Simpson, Jr.,* Public Defender, by: *Deborah*

*R. Sallings,* Deputy Public Defender, for appellant.

*Steve Clark,* Att'y Gen., by: *Marci L. Talbot,* Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Jerry Don Owens, appellant, was charged with capital felony murder, rape, and aggravated robbery. The state alleged in the felony information that Owens, acting in the commission of the offense of rape, caused the death of Gladys Anna Moore and on the same date engaged in sexual intercourse and deviate sexual activity with her by forcible compulsion. Another count charged Owens with the use of physical force for the purpose of committing a theft. Owens was convicted on all counts and sentenced to life imprisonment without parole. This appeal comes to us under Rule 29(1)(b) of the Rules of the Arkansas Supreme Court and the Court of Appeals.

Appellant raises three points on appeal. He claims the trial court erred in admitting a confession given by him soon after he was taken into custody. He argues that because the police lacked probable cause to arrest and detain him, his statements were the product of an illegal arrest.

Appellant's second argument is a challenge to the constitutionality of death qualified juries and to the overlapping between the capital felony murder and first degree murder statutes.

Before considering the argument that Owens' arrest was illegal, necessitating the suppression of his confession, we address the second and third points, both of which have been answered in other cases. We considered the question of death qualified jurors in depth in *Rector* v. *State,* 280 Ark. 385, 659 S.W.2d 168 (1983), rejecting the premise that jurors selected according to *Witherspoon* v. *Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L. Ed. 2d 776 (1968) are so prone to convict that defendants tried by a jury so constituted are deprived of the right to a fair trial. We decline to overturn our decisions. See *Linell* v. *State,* 283 Ark. 162, 671 S.W.2d 741 (1984), and *Keeten* v. *Garrison,* 742 F.2d 129 (1984).

Similarly, the proposition that our capital felony murder statute, Ark. Stat. Ann. § 41-1501 (1)(a) (Repl. 1977), and our first degree murder statute, § 41-1502 (1)(a), are void for vagueness because they overlap has been answered. *Ruiz and Denton* v. *State,* 273 Ark. 94, 617 S.W.2d 6 (1981), Certiorari denied, 454 U.S. 1093 (1981). *Wilson* v. *State,* 271 Ark. 682, 611 S.W.2d 739 (1981); *Cromwell* v. *State,* 269 Ark. 104, 598 S.W.2d 73 (1980); *Martin* v. *State,* 261 Ark. 80, 547 S.W.2d 81 (1977).

Owens lived with his girlfriend, Margie Cherry, and her mother and sister, whose home was near Ms. Moore, who kept a great many cats, more than she could clean up after. Ms. Moore kept fifteen to twenty cats, and was known as the "Cat Lady." Owens' confession provides this account: He asked Ms. Moore if he could use her telephone. Inside, he became annoyed by a comment she made and by an overpowering stench of cat feces. He said it was so strong that he became nauseated. He struck Ms. Moore twice in the face with his fist and she fell backward on a bed. He removed her clothing, covering her battered face with an undergarment, and sexually assaulted her. Before leaving, he took $20 from her billfold. There was proof that earlier that evening Ms. Moore had asked a neighbor, Dorothy Howard, to go to the grocery for her because she was not feeling well. Mrs. Howard used her own money to make the purchases and placed $20 in Ms. Moore's wallet, delivering the wallet and groceries to Ms. Moore about 6:30 p.m. on December 15, 1982. Ms. Moore's body was discovered about 4:00 p.m. on the next day. The medical examiner said her death occurred between 10 and 11:00 p.m. on the 15th.

Owens' primary argument is that the trial court erred in admitting his confession and clothing as evidence. He maintains this proof is tainted because he was arrested without probable cause, citing *Dunnaway* v. *New York,* 442 U.S. 200 (1979) and *Brown* v. *Sullivan,* 422 U.S. 590 (1975).

On the morning of December 17, Sgt. Thorn, of the North Little Rock police department, went to Ft. Roots to interview Wayne Provencio, whom he knew. Provencio had left word at police headquarters for Thorn to contact him.

When Thorn questioned Provincio he told him that his neighbor Angela Cherry, Margie's sister, had told him that Owens had come home on the night of the murder with blood on his clothing. Provencio, he said, thought Owens was responsible for the murder of Gladys Moore. Owens had come to Provencio's house that same evening asking to be taken to a liquor store and Provencio noticed that his clothing was very clean and neat.

Sgt. Thorn knew Owens had been arrested for burglary and first degree battery involving a stabbing and, against the possibility of violence or flight, took three officers with him to the Cherry residence, arriving about 10:00 a.m. They were permitted to come in and found Owens still in bed. They said Owens gave them permission to examine and take his clothing and Margie Cherry told them she had washed blood stains from the clothing. One of the officers noted Owens' boots had a strong odor of cat excrement, which he related to the victim's house. Owens gave an alibi for his whereabouts at the time of the murder. There was testimony that Owens voluntarily accompanied the officers to police headquarters where the *Miranda* warnings were read to him and where he readily admitted his involvement in the crime.

Whether Owens accompanied the officers willingly is, of course, a material consideration, as one who does so cannot then claim he was coerced. See *Simmons* v. *State,* 278 Ark. 305, 645 S.W.2d 680 (1983). If so, the issue of probable cause for the arrest fades quickly, as there was proof that Owens' alibi did not check out, adding to the evidence against him. We find nothing about the actual taking of the confession that renders it inadmissible. Owens claims he was under the influence of drugs when he confessed, but that testimony was refuted by other proof. Whether Owens' presence at police headquarters was forced rather than voluntary is sharply disputed and much could be said in support of either side. The testimony was conflicting, as often occurs in these cases. The officers were unable to recall whether Owens was handcuffed before accompanying them, though Owens and the Cherrys assert that he was. If that were so, it would lend credence to the premise that Owens' trip to headquarters was not by invitation but by com-

pulsion, although there was testimony by the State that it was customary to handcuff individuals when the police car lacked a protective screen, as in this case. The trial court resolved these conflicts surrounding the confession in favor of the State and while we review the proof independently on appeal, we do give considerable weight to the findings of the trial judge where the evidence is in dispute. *Harvey* v. *State,* 272 Ark. 19, 611 S.W.2d 762 (1981); *Harris* v. *State,* 244 Ark. 314, 425 S.W.2d 293 (1968). But assuming the arrest occurred at the house, we believe there was probable cause at that point. Probable cause is said to exist when the facts and circumstances within the officers' knowledge and of which they have reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that an offense has been committed by the person being arrested. *Brinegar* v. *United States,* 338 U.S. 160 (1949); *Coble* v. *State,* 274 Ark. 134, 624 S.W.2d 421 (1981). The officers had reason to believe that Owens, who lived near Ms. Moore, had come home with blood on his clothing the night of her murder. That information was confirmed by the comments of Margie Cherry the next morning. The scene of the murder was splattered with blood, and cat excrement from the twenty or so cats she kept was deposited profusely around the house. Owens' boots bore the strong traces of cat feces. We make no contention that Owens could be convicted on that proof, but probable cause need not equate with proof sufficient to convict. It is enough if practical, common sense considerations of reasonable men, rather than legal technicians, point to guilt. *McGuire* v. *State,* 265 Ark. 621, 580 S.W.2d 198 (1979); *Holmes* v. *State,* 262 Ark. 683, 561 S.W.2d 56 (1978). In *Sanders* v. *State,* 259 Ark. 329, 532 S.W.2d 752 (1976) we said:

> [P]robable cause is only a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man to believe that the accused committed a felony, but not tantamount to the quantum of proof required to support a conviction. . . . The existence of probable cause depends upon the facts and circumstances of which the arresting officer has knowledge at the moment of the arrest.

Moreover, on appeal all presumptions are favorable to the trial court's ruling on the legality of the arrest, and the burden of demonstrating error rests upon the appellant. *Brewer* v. *State*, 271 Ark. 810, 611 S.W.2d 179 (1981).

Even if it could be said that probable cause was lacking at this point, and that Owens' removal from the Cherry residence to the police station was involuntary, an illegal arrest does not necessarily taint what follows. If intervening circumstances occur which break the causal connection between an unlawful arrest and a confession, the confession, if otherwise admissible, may be used in evidence. *Brown* v. *Illinois*, 422 U.S. 598 (1975); *Wong Son* v. *United States*, 371 U.S. 471 (1963); *Nardone* v. *United States*, 308 U.S. 341 (1939); *Brewer* v. *State, supra.* Here, Officers Thorn and Farley went directly from the Cherry residence to investigate Owens' claim that he had been with Jimmy Brown at Burns Park at the time of the murder. Brown denied being with Owens at all and this information was called in to police headquarters within thirty minutes, which would have been shortly after Owens arrived there. We take it that Owens' confession took place at about eleven o'clock, as the taping interview was concluded at 11:27 a.m. The knowledge that Owens' alibi was false provided sufficient intervening cause, if any were necessary.

A final argument is that there is no proof the theft of twenty dollars was accomplished according to the statute defining aggravated robbery, Ark. Stat. Ann. § 41-2102 (Supp. 1983):

> (1)   A person commits aggravated robbery if [with the purpose of committing a theft or resisting apprehension immediately thereafter, he employs or threatens to immediately employ physical force upon another person, Ark. Stat. Ann. § 41-2103 (Repl. 1977)], and he:
>
> (b)   inflicts or attempts to inflict death or serious physical injury upon another person,

Owens submits the lapse of time between the death of Ms. Moore and the time she received the money from Mrs.

Howard, some four hours, supports the assumption that she may have disposed of the money herself. Of course, Owens' confession admits to taking the money, but this, he argues, may have been an afterthought.

Owens cannot be sentenced for capital murder and aggravated robbery, but he can be convicted of both. *Hill* v. *State*, 275 Ark. 71, 628 S.W.2d 285 (1982). We need not attempt to fathom Owens' mind to determine whether theft came to him as forethought or an afterthought to his attack on Ms. Moore. He admitted having only a few coins when he entered Ms. Moore's home and then going promptly to purchase and consume drugs. The proof clearly permitted a finding that Owens took the money, and whether his primary purpose was other than obtaining money, it is enough under the circumstances that the murder and the theft occurred during the same brief interval. The jury could have inferred that theft was a purpose behind his assault, it need not have been the only purpose. The case is comparable to *Johnson & Carroll* v. *State*, 276 Ark. 56, 632 S.W.2d 416 (1982), where we said:

> There is no merit to this argument. Intent or purpose to commit a crime is a state of mind which is not ordinarily capable of proof by direct evidence, so it must be inferred from circumstances. (citation omitted) The jury is allowed to draw upon their common knowledge and experience in reaching a verdict from the facts directly proved.

We have examined all other objections made during the trial pursuant to Rule 11(f), Rules of the Supreme Court, Ark. Stat. Ann. Vol. 3A (Repl. 1977) and find no error. See *Earl* v. *State*, 272 Ark. 5, 612 S.W.2d 98 (1981).

Affirmed.

HOLLINGSWORTH, J., dissents, and adheres to his views expressed in *Linell* v. *State*, 283 Ark. 162, 671 S.W.2d 741 (1984).